## WOOD *v.* KELSEY.

### Opinion delivered May 3, 1909.

1. CONTRACTS—CONSTRUCTION.—Courts are inclined to construe the various promises in a contract to be inseparable where they form the consideration for one another, unless there is some very definite expression of an intention of the parties to the contrary. (Page 276.)

2. SAME—PAROL EVIDENCE TO EXPLAIN.—Where a contract is ambiguous, parol evidence is admissible to explain the situation of the parties, so that the court may correctly apply the language used to the things described. (Page 277.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellant brought suit against appellee before a justice of the peace of Miller County for $300, alleged to be due appellant on contract for rent of a sawmill, and caused attachment to be issued therein. He recovered judgment in the justice's court, and appellee appealed to the circuit court. On the trial in the circuit court, appellant testified that appellee was due him $300 for rent of the mill for three months, from December 15 to March 15, at the rate of $100 per month. Appellee then introduced the following contract:

"Know all men by these presents, that I, G. W. Wood, of the county of Miller and State of Arkansas, for and in consideration of the sum of $1.50 per thousand feet, log scale, to be paid after the timber is cut and delivered at the mill, have this day bargained, sold and conveyed, and by these presents do bargain, sell and convey, to W. A. Kelsey, of the county of Bowie and State of Texas, all the timber now standing on the west half of sec. 8, the west half of sec. 9, all of sections 16 and 17, the east half of section 22, in township 16 south, range 27 west, in the county of

Miller and State of Arkansas. The said Kelsey shall have the right to enter upon said lands with men, teams and tools, cut and haul said timber as he may direct. All timber eight inches in diameter and larger.

"It is further agreed and understood that the logs are to be scaled at the mill at Genoa, in Miller County, Arkansas, as they are delivered, and for all timber cut and delivered during each month payment shall be made on the fifteenth of the month following.

"It is further agreed and understood that said Kelsey shall remove said timber within one year from date hereof, and all timber left on said land at the expiration of one year from date hereof shall be the property of the said G. W. Wood.

"In consideration of the sum of $100 per month, payable monthly in advance, the said G. W. Wood hereby rents and leases to the said W. A. Kelsey his boiler, engine, sawmill, sheds, trams and all sawmill tools and appliances appertaining thereto, in the county of Miller and State of Arkansas, and situated at Genoa, Arkansas, on the N. E. ¼ of sec. 8, township 16 south, range 27 west.

"It is further understood and agreed that the said Kelsey shall have the right to use four acres of land in the N. E. ¼ of sec. 8, township 16 south, range 27 west, on which said sawmill, shed, trams, etc., are now located, for the purpose of sawing said timber into lumber, manufacturing and shipping same during the term of this lease and contract, one year from the date hereof.

"It is further agreed and understood that the said Kelsey shall have the right to erect and operate dry kilns, additional trams and sheds, planers and sheds on the said six acres, and to operate the same together with the sawmill and appliances in the sawing and manufacturing timber into lumber, whether all of said timber be procured from the lands herein described or from any other lands or persons during the term of this contract.

"It is further understood and agreed that by giving notice to the said Wood on or before Sept. 15, 1907, the said Kelsey shall have the option of buying said engine, boiler, sawmill machinery, tools and appliances for the sum of $1,000, and all money paid to said Wood prior to that time on account of rent for said

machinery shall be applied to the payment of the purchase price of one thousand dollars, and upon the payment of the remainder of said sum of $1,000 the title to said machinery shall pass to and be in the said W. A. Kelsey.

"It is further agreed and understood that the said Kelsey shall remove all lumber, machinery and other property of every description to which he is entitled from the six acres hereinbefore described, on or before the expiration of this lease.

"It is also agreed and understood that if for any reason or cause the said Kelsey should fail to remove the timber within one year from the date hereof he shall have the option of continuing this lease in full force and effect for another year, making two years in all, from the date hereof.

"Witness our hands this the 18th day of July, A. D. 1907.

[Signed]      "W. A. Kelsey,<br>"G. W. Wood."

The testimony in the case shows that appellee offered to surrender the mill on the 15th day of November, 1907, but appellant refused to receive it unless appellee would also surrender the timber designated in the contract. The correspondence between the parties and their oral testimony show that the appellee was contending that under the contract he had the right to surrender the mill, machinery, etc., at any time upon giving notice to appellant of his intention so to do, and thus relieve himself of any further obligation to pay rent from that time on, and that he had a right to do this without surrendering the right to the timber under the contract. On the other hand, appellant was contending that appellee could not surrender the lease of the mill, machinery, etc., without also giving up the contract as to the timber; that appellant was willing to waive the time and to cancel the contract as to the lease if appellee would also consent to cancel it as to the sale of the timber. But appellant contended that the contract was entire, and must stand or fall as a whole.

The record shows that, after the case had been submitted to the court, plaintiff offered to prove the circumstances attending the execution of the contract for the purpose of showing that said contract was not a divisible contract; and the court, because the case had already been submitted and the jury discharged, refused to admit additional testimony. The appellant offered to

testify as follows: "Mr. Kelsey first called me up over the 'phone, and said he understood I had a sawmill to sell. I told him I couldn't sell the mill without selling the cotton gin, as it would take my power. I asked him how it would suit him to buy my timber and rent the sawmill. He said he would come out and look at the timber. When he came and looked and decided to buy the timber and rent the mill, he went away and prepared the contract, and brought it back, and we signed it after the changes were made in it. I wouldn't have sold the timber without renting the mill. I would have rented the mill without selling the timber, but he wouldn't have any use for the mill without the timber. He couldn't have got enough timber around there to justify him renting the mill unless he had got mine. I wouldn't have had any use for the mill without my timber. The mill and timber were not talked of separately."

The court refused to consider the testimony, except this sentence: "I wouldn't have sold the timber without renting the mill." To this refusal appellant properly excepted. The court made the following finding: "That the contract entered into between the plaintiff and defendant is a separable and divisible contract as to the purchase of timber and rental of a sawmill, and that defendant surrendered the mill to plaintiff and had a right to do so, and, this suit being for rent accruing since the surrender of said mill, the court finds for the defendant." Judgment was rendered accordingly, and appellant prosecutes this appeal.

*Webber & Webber,* for appellant.

As the court was considering the question of whether the contract was entire or divisible, the offered evidence that "I wouldn't have sold the timber without renting the mill" was material and admissible. 67 Am. Dec. 75; 14 *Id.* 458; Beach on Contracts, § § 702-712. It is the duty of the courts to carry out the intention of the parties, unless it violates some rule of law or of public policy. 28 Ark. 390; 24 *Id.* 197; 11 Gill & J. 152. A contract may be entire, though expressed in two or more distinct stipulations. 48 Ark. 415. The entirety of a contract depends upon the intention of the parties, and not upon the divisibility of the subject. 60 Pa. St. 182.

*Woodard & Lewis,* for appellee.

It is within the discretion of the court to refuse or permit the introduction of further evidence after the case has been submitted. It was therefore not error, to refuse it. 30 Ark. 312; 34 *Id.* 383; 37 *Id.* 562. The oral testimony should have been rejected, even if offered before the case was closed. 4 Ark. 179; 5 *Id.* 651; 15 *Id.* 543; 24 *Id.* 210; 25 *Id.* 191; *Id.* 309. Where a contract is reduced to writing, it is the evidence of the intention of the parties. 30 Ark. 186. A contract consisting of several distinct items, and founded on a consideration which is apportioned to each item, is severable. 66 Pa. St. 351; 15 Wis. 107; 10 Johns. 203; 11 N. Y. 35; 92 S. W. 1104. Distinct stipulations relating to separate subject-matters are treated as separate contracts. 46 M. 141; 100 Mass. 174; 11 Wheat. 237; 143 Mass. 386.

Wood, J. (after stating the facts). I. When the various paragraphs of this contract are considered together, as they must be, it will be seen that they refer to the subject-matters of the sale of the timber and of the leasing of the mill in such a manner as to show that its various provisions are interdependent and preclude all idea of the divisibility of the contract. Construing the contract as a whole, its provisions indicate that it was the intention of the parties that there should be a sale of the timber mentioned, and also the use of the mill mentioned for the purpose of "sawing said timber into lumber," and that the one was not to exist independent of the other. Indeed, the language of the contract indicates that the parties contemplated, in the making of it that there could not be a sale of the timber according to the terms of the first, second, third and ninth paragraphs of the contract without a lease and use of the mill plant as provided for in the other paragraphs as well as also in the ninth. Here is one instrument, with various provisions so interwoven by cross-reference as to show an intention to make the agreement concerning the disposition of one subject-matter the consideration for the agreement concerning the other. They both form the whole consideration for the contract, and it must be considered as an entirety to carry out the intention of the parties to it, as indicated by the language employed to express such intention. "The modern cases show," says Mr. Clarke, "that the tendency of the courts is not to construe promises to be absolute and inde-

pendent of one another, where they form the whole consideration for one another, unless there is some very definite expression of an intention of the parties to that effect." Clarke on Contracts, § 244; 9 Cyc. 643; Ex parte *Hodges,* 24 Ark. 197; *Ish* v. *Morgan,* 48 Ark. 413. The construction of the contract was for the court.

II. But, if we are mistaken in the view that the contract was unambiguous, and that the languge employed of itself showed that it was an entire contract, then it was the duty of the court to consider the testimony offered in evidence. While it is in the discretion of the court to receive testimony offered after the cause has been submitted, that is quite a different matter from rejecting evidence that would enable the court to properly construe the contract. The offered testimony revealed the situation of the parties and the subject-matter of the contract, the circumstances, of the transaction, the inducement for making the contract, and the object the parties had in view. It is proper for the court to be in possession of these in order to determine what the parties meant by the language employed to express their agreement. Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described. *Goddard* v. *Foster,* 17 Wall. 123; *Baldwin* v. *Carter,* 42 Am. Dec. 735; *Matter of the N. Y. C. R. R. Co.,* 49 N. Y. 414; *Blossom* v. *Griffin,* 7 Am. Dec. 75 and note; Beach on Cont. § 719; *Haney* v. *Caldwell,* 35 Ark. 156.

There was nothing in the proffered testimony that tends to vary or contradict the terms of the written contract, and certainly if the contract in itself had been of doubtful signification this testimony would have made its interpretation plain beyond peradventure, and would have shown it to be an indivisible contract.

The court erred, therefore, in its construction of the contract and in rendering judgment for the appellee. For the error indicated the judgment is reversed, and the cause remanded with

directions to enter judgment against appellee and the American Surety Company for three hundred dollars.