DOLLY PARKER MOTORS, INC., *v.* STINSON.

4-9684                                                245 S. W. 2d 820

Opinion delivered February 11, 1952.

*W. H. Kitchens, Jr.,* for appellant.

*Jack Machen,* for appellee.

GEORGE ROSE SMITH, J. This is a suit for $255.22, brought by the appellee as plaintiff. The complaint alleges that the plaintiff has a credit in that amount with the defendant, a Ford automobile dealer. The defense is that as a part of an agreed exchange of used vehicles the plaintiff agreed to buy a new Ford from the defendant, and the defendant is entitled to hold the credit for application on the price of a new car when the plaintiff decides to buy one. At the close of the proof the trial court directed a verdict for the plaintiff. In this situation we view the evidence most favorably to the party against whom the verdict was directed; so we shall state the facts in that manner.

In the fall of 1949 the plaintiff, a plumber, was urgently in need of a pick-up truck; his tools were damaging the Ford sedan that he was using. The defendant had for sale a used truck for which it had allowed $500 in a trade for another car. The plaintiff wanted to exchange his sedan for the truck, but he insisted upon being paid $1,200 for the sedan. The defendant's salesman told the plaintiff that the sedan was not worth $1,200 and that the company could not make the trade. Stinson was so persistent, however, that the salesman, "to get him off our necks," finally agreed to let him have the truck at the same $500 valuation at which the company had acquired it and to take the sedan at Stinson's price, provided that Stinson would buy from the company the new Ford which he expected to need at about Christmas. Stinson agreed to this arrangement. Since there was an incumbrance against the sedan amounting to $444.78, which the company assumed and paid, the net credit amounted to $255.22, the sum sued for. Later on the company resold the sedan for $950, confirming the salesman's estimate of its value. Thus at this point the company had sustained a loss which it hoped to recoup by selling Stinson a new car.

Shortly before Christmas the salesman asked Stinson when he would be ready for his new car. Stinson said that he would not need it until after the first of the year. The salesman cautioned Stinson to give the company a little advance notice so that the car he wanted could be obtained. Apparently Stinson made no objection to this suggestion.

On a Saturday afternoon in March, without previous notice to the company, Stinson appeared and asked for a new car. At that time the only new Ford on hand was an expensive model equipped with a radio, heater, overdrive, etc., and having a market price of $2,149.90. Stinson was unable to make the down payment required on a car sold at this price. Without giving the company an opportunity to obtain a cheaper car Stinson went to a dealer in another city and bought a new Ford priced at $1,811. He then filed this suit to recover his credit.

The sole question is whether the terms of the agreement are sufficiently certain to constitute a valid enforcible contract. The appellee's theory is that the asserted agreement is fatally defective in failing to specify the model, price, accessories, color, and other details concerning the new car that Stinson was to buy.

This legalistic view of the matter is out of harmony with the usages of practical business men. We doubt if the average citizen would consider Stinson's agreement so meaningless that he should be permitted to disregard it and cause the company to suffer a loss in a transaction that was largely an accommodation to Stinson. Similar agreements have been made elsewhere and have been enforced by the courts. In *McIllmoil* v. *Frawley Motor Co.,* 190 Calif. 546, 213 P. 971, the pertinent part of the plaintiff's written agreement upon a like trade-in was simply: "I will buy a new Mitchell car. It is understood that Frawley Motor Co. shall keep $500.00 as a deposit on the new car." In holding the contract valid the court said: "Here the plaintiff had agreed to purchase from the defendant a new Mitchell automobile. The particular car to be taken was not thereafter a subject of negotiations, all that remained to be done in this behalf being the selection by the plaintiff of one of the various models of Mitchell cars on sale by the defendants. Nor was the price to be paid therefor a subject of future agreement, since, the prices of the various models . . . being fixed and standard, the selection by plaintiff of the car desired determined the price and made the contract definite in that respect also." To the same effect is *Moon Motor Car Co., of New York,* v. *Moon Motor Car Co., Inc.,* 2d Cir., 29 F 2d 3, where Judge LEARNED HAND summarized the principle in a sentence: "When the buyer must choose among classes of chattels which are defined, or will be when the time comes, and at prices then fixed by something other than the promisee's will, exercised *ad hoc,* the usual rule is that an obligation arises."

In the case at bar there was testimony that the price of new Fords is fixed by the manufacturer. All that Stin-

son had to do was to make his selection, which of course he was entitled to do. Even if the jury should find that the parties did not later expressly agree that advance notice should be given the company, the law would allow the seller a reasonable opportunity to obtain the car selected by Stinson. If there were only four models and eight available colors there would be thirty-two possible choices, and Stinson could not reasonably expect the dealer to have them all in his showroom on demand. As to the enforcibility of the contract, upon a breach by the defendant the courts will have no difficulty in affording the plaintiff his remedy, and upon the plaintiff's refusal to perform the defendant's damages are to be measured by its profit on that model which provides the smallest profit to the dealer. Rest., Contracts, § 32, Illustration 8.

Reversed and remanded for a new trial.

WARD, J., dissents.