J. E. STEVENSON JR. *v.* DORIS M. MARQUES

5-3991                                                    407 S. W. 2d 391

Opinion delivered October 31, 1966

*William H. Drew* of *Drew & Hollaway,* for appellant.

*DuVal L. Purkins,* for appellee.

GUY AMSLER, Justice. Mrs. Hazel Cook Townsend owned some 3,500 acres of land in Chicot County, Arkansas, located on what is known as Stewart's Island. On April 6, 1962, she conveyed some 2,000 acres of her holdings to M. Pickett Myers and J. E. Stevenson Jr.,

appellant in this cause, for a consideration of $185,000.00 plus the assumption of a $91,000.00 mortgage debt.

Among other reservations and exceptions contained in Mrs. Townsend's conveyance to Myers and Stevenson was the following:

> "It is further understood that Grantor will retain all present government cotton allotment, which has heretofore and now been allotted to any lands owned by her, and Grantees agree that they, their heirs and assigns, shall never make claim to any cotton allotment that may or could be alloted to the above conveyed lands, unless Grantor shall sell the remaining portion of her property; however, in no event will Grantees, their heirs or assigns, disturb any present cotton allotment now owned or held by Grantor; provided, however, if by reason of a change in the present program, Grantees can obtain a separate and additional cotton allotment, they may do so."

In 1962, Mrs. Townsend farmed all the cotton allotment for the land retained by her and the acreage conveyed. The existence of Mrs. Townsend on this earth was terminated on December 8, 1962. J. W. Loyd was appointed executor and trustee of her estate. Doris M. Marques, appellee, later succeeded Mr. Loyd as trustee of the estate. Prior to the instant litigation Myers conveyed his interest in the land to appellant Stevenson.

In June of 1962, Stevenson, in an effort to obtain assistance for providing the land purchased from Mrs. Townsend with effective drainage and obtain a wheat allotment, filed a copy of his deed with the Chicot County Agricultural, Stabilization and Conservation Service. Then in January of 1963, appellant made application to the County A.S.C.S. for a marketing quota on the 2,000 acres owned by him. The committee then reconstituted the Townsend farm and found that Mrs. Townsend was entitled to 280.2 acres of cotton allotment and Stevenson

73.9 acres. On appeal to the State Review committee this was reversed on July 15, 1963, and Stevenson's allotment was increased considerably while Mrs. Townsend's was reduced.

From the middle of 1963 until December of 1965, appellee and her predecessor (Loyd) trustee, prosecuted numerous complaints before the State Committee and the Federal Courts but were unable to get the desired construction of the cotton allotment "retainer" clause contained in the Townsend conveyance.

On August 19, 1963, J. W. Loyd, executor, filed this cause against the grantees, their wives and the Prudential Insurance Company of America. Prudential was joined because it had made a substantial loan to the grantees of Mrs. Townsend.

The complaint alleged, *inter alia*, that grantees had breached the "retainer" clause in the conveyance because they:

"knew at the time of the filing of this instrument with said office that this constituted a breach of this provision of their deed as under the applicable law and regulations of the Department of Agriculture, the giving of notice of this conveyance to the local representatives of the Department of Agriculture required them to immediately reconstitute and apportion the acreage allotments on said farm.

"Said Defendants further continued their breach of said provision by filing with the above local office of the United States Department of Agriculture on January 17, 1963, a petition for reconstitution of said farm, the purpose of which was to acquire the apportioned cotton allotment for the lands they had purchased under the deed."

It was also alleged that:

"both parties to this transaction were informed as

to the consequences of any notice to the Department of Agriculture regarding a sale of a portion of the farm and said Defendants' actions in immediately notifying the Department of Agriculture and subsequently requesting a reconstitution is in effect fraudulent as to this Plaintiff, or such inequitable conduct in the light of all other circumstances as to justify and require a rescission of this contract of sale; that the loss of the cotton allotment to the remainder of the lands retained by Mrs. Hazel Cook Townsend is a direct result of the actions of the Defendants in notifying the Department of Agriculture of the sale and requesting reconstitution; that the value of this remaining portion of the land is greatly reduced by the loss of the cotton allotment and the value of the lands obtained by the Defendants in the sale is greatly enhanced by obtaining the cotton allotment and this is an enhancement for which they paid no consideration and which the said Mrs. Hazel Cook Townsend did not agree to sell and for which she received no consideration.''

Prayer of the complaint was that deed from Mrs. Townsend to her grantees and any subsequent conveyances by them be cancelled and that title be reinvested in petitioner as Trustee of the Townsend estate. Alternate prayer was that:

''in the event this Court should find that although Petitioner is entitled to a cancellation of said instrument but, such cancellation should not be decreed due to impossibility of placing the parties in *status quo,* that this Court determine the damages resulting to Petitioner and award Petitioner a judgment for same. . .''

There were a number of interjacent pleadings, one being a motion for summary judgment (which was denied) based mainly on the contention that the reservation ''grantor will retain all present government cotton allotment which has heretofore and now been allotted

to any lands owned by her" applied only to the 1962 allotment (contract of sale was entered into on the 26th day of October, 1961, and conveyance executed April 6, 1962) and not to any allotment that might be made by the A.S.C.S. in future years.

Following a number of hearings and the taking of extensive proof the Chancellor declined to set the deed aside and concluded that:

"1. The contract is not invalid as in violation of any statute of the State of Arkansas, or of the United States of America;

2. The contract is not invalid as being violative of the public policy of the State of Arkansas, or of the United States of America;

3. Stevenson is not guilty of fraud;

4. Stevenson has breached the terms of the contract and is answerable in damages for such breach;

5. Loyd should have judgment against Stevenson for the sum of $3,695.00, with interest thereon at the rate of 6% per annum;"

Stevenson in prosecuting this appeal relies on six points for reversal. In our view a seriatim treatment of these points is unnecessary.

The trial court's conclusions were predicated on what we consider to be a "strained" construction of the meaning, intent and results of the reservation contained in the Townsend conveyance. We quote briefly from the chancellor's voluminous findings:

"Under the terms of the contract Stevenson contracted to permit Mrs. Townsend to retain and work the cotton allotment allocated to the Townsend plantation by the Department until such time as the re-

maining acreage of the plantation was sold. This agreement provided that she was to retain and work the cotton allotment to be allocated to the land in issue when the Townsend plantation was reconstituted and the cotton allotment "split-out" by the Department. The agreement to carry out the intent of the parties provided that Stevenson was to make available to Mrs. Townsend a sufficient amount of land on the land in issue to support the allotment. Stevenson has failed and refused to allow Loyd to work said cotton allotment and/or make available sufficient land to support the allotment, thus Stevenson has breached the contract. Stevenson worked 73.9 acres of the cotton allotment in the year of 1963. The rental value of cotton allotments in Chicot County, Arkansas, for the year of 1963 was $50.00 per acre. Loyd should have judgment against Stevenson for $3,695.00.''

There are a number of valid reasons why the meticulous chancellor's construction of the reservation cannot be sustained. There was no obligation whatever placed on grantees (appellant) by the retainer except not to make claim to any cotton allotment that they might be entitled to until Mrs. Townsend sold her remaining lands and not to disturb any "present" cotton allotment held by their grantor.

Certainly it cannot be logically declared that this language bound grantees, their heirs and successors in title to guarantee grantor, her heirs and legal representatives a fixed cotton allotment (contrary to law) in perpetuity, on the lands retained by Mrs. Townsend.

This contract was prepared by Mrs. Townsend's legal representative (not the attorney for appellee), and under our rule, if doubt exists regarding phraseology, it is to be construed most srrongly against her. *Foster* v. *Universal C.I.T. Corp.*, 231 Ark. 230, 330 S. W. 2d 288; *Keith* v. *City of Cave Springs*, 233 Ark. 363, 344 S. W. 2d 591.

Cotton allotments are made on an annual basis. At the time of the conveyance by Mrs. Townsend her cotton allotment for the crop year 1962 had already been fixed. In other words there was "a present government cotton allotment" *in esse.* Mrs. Townsend farmed her full quota in 1962. Black's Law Dictionary defines "present" as meaning "now existing; at hand; relating to the present time; considered with reference to the present time." Webster's International Dictionary (3rd ed., 1961) sets out that "present" means "in being at this time; not past or future."

The appellate court of Missouri dealt with this question in 1959 and said:

"The very nature of a cotton acreage allotment is such that it has no existence except for the one specific year. It expires with the crop year. It is not continuous. The fact there may (or may not) be another allotment fixed for the next year carries no certainty that a successive allotment will be in the same amount or acreage." *Duncan* v. *Black,* 324 S. W. 2d 483 (Mo. 1959).

It is our conclusion that "present government cotton allotment" as used in the "retainer" clause of the conveyance meant the 1962 cotton acreage and that since Mrs. Townsend farmed her full quota for that year appellee cannot be held liable for any subsequent reduction in the cotton allotment to lands held by her legal representative.

It is significant that in drawing the sales contract and conveyance Mrs. Townsend's representative added "heirs and assigns" after grantees' names but omitted including any successor parties after "Grantor." The exact provision being "Grantor will retain all present government cotton allotment." It could reasonably be concluded from this that the "retainer" was intended as a personal covenant, at most, which expired with the demise of Mrs. Townsend. *Field* v. *Morris,* 88 Ark. 148,

114 S. W. 206; *Ft. Smith Gas Co.* v. *Gean,* 186 Ark. 573, 55 S. W. 2d 65.

Here we have a situation where all the parties or their representatives knew that "traffic" in crop allotments was forbidden by federal laws and regulations. They knew that a seller was required to report any sale to the County A.S.C.S., but when the buyer did what the seller was required to do under the law he is sued for damages alleging breach of contract and fraud. Appellee trustee is not entitled to equitable relief. The cause is therefore reversed and remanded to the trial court with directions to dismiss appellee's complaint.