ARKANSAS ROCK & GRAVEL COMPANY
et al *v.* CHRIS-T-EMULSION
Company, Inc.

76-20                                        536 S.W. 2d 724

Opinion delivered June 1, 1976

*Keith, Clegg & Eckert,* for appellants.

*Smith, Williams, Friday, Eldredge & Clark,* by: *William H. Sutton* and *Joseph E. Kilpatrick Jr.,* for appellee.

GEORGE ROSE SMITH, Justice. The decision in this case turns upon the meaning of the parties' contractual reference to "the Spring of '74." The trial judge considered the phrase to be ambiguous and submitted its meaning to the jury. The verdict was for the plaintiff-appellee, in the amount sued for, which means that the jury agreed with the plaintiff's interpretation of the contract. For reversal the defendant argues that the court gave incorrect instructions and erred in other respects. We affirm the judgment on the ground that the plaintiff was entitled to recover as a matter of law, there being no issue of fact for the jury.

The plaintiff, Chris-T-Emulsion, successor to Ben M. Hogan Company, is a supplier of asphalt. The principal defendant, Arkansas Rock & Gravel, is a highway contractor. In the summer and early fall of 1973 Arkansas Rock & Gravel was planning to submit a bid to the state highway department for an extensive repair job on Interstate 40. It was too late for the work to be begun in that calendar year. Before submitting its bid Arkansas Rock & Gravel asked Hogan for a price on the asphalt that would be needed. Hogan's first quotation was not a firm offer. Upon being pressed for a firm price, to be reduced to writing, Hogan on September 29, 1973, wrote the letter-contract now in issue. That letter identified the project by job number, estimated the asphalt to be required at approximately 380,620 gallons, and quoted a

price that was essentially 14 cents a gallon plus a freight charge that varied with the three counties that were involved. Hogan's representative testified that, because asphalt prices were very unstable, he inserted a sentence that the company did not ordinarily use in such letter-contracts: "This quotation is with consideration the material will be used in the Spring of '74." Arkansas Rock & Gravel endorsed its acceptance upon a copy of the letter and returned it to Hogan. Chris-T-Emulsion succeeded Hogan as the seller.

Arkansas Rock & Gravel was the successful bidder for the repair job and began the work in 1974. Chris-T-Emulsion supplied most of the asphalt at the quoted price, but on June 24 it notified the purchaser by letter that the original quoted price was good only "through the Spring (June 20) of 1974," and that thereafter the price would be increased to 29 cents a gallon. Arkansas Rock & Gravel protested the increase and refused to pay that price for subsequent deliveries. The plaintiff brought this action for the amount that is admittedly due if it was entitled to increase its price after June 20.

We do not consider the controlling rules of law to be open to dispute. The construction and legal effect of a written contract are to be determined by the court as a question of law except where the meaning of the language depends upon disputed extrinsic evidence. *Security Ins. Co. of Hartford* v. *Owen*, 252 Ark. 720, 480 S.W. 2d 558 (1972). Here there was undoubtedly an ambiguity as to the precise meaning of the phrase, "the Spring of '74," because dictionaries uniformly recognize that "spring" is popularly considered to be the months of March, April, and May, but scientifically considered to be the period from the vernal equinox (about March 21) to the summer solstice (about June 21). Webster's Second New International Dictionary (1934); American Heritage Dictionary (1969).

When such a minor ambiguity is involved, the contract does not fail, because the complaining party may fairly be allowed to insist upon the interpretation that is least favorable to him. For instance, in *Dolly Parker Motors* v. *Stinson*, 220 Ark. 28, 245 S.W. 2d 820 (1952), we upheld an agreement by which Stinson promised to purchase a new Ford car from a dealer. Even though the particular car to be purchas-

ed, among many available models, was not specified, we held that, upon the buyer's breach of the contract, the seller was entitled to recover the profit that he would have made upon that model which provided him the smallest profit. Similarly, the plaintiff in this case can fairly insist, as it does, upon the definition of spring which is least favorable to it.

There remains the appellant's principal argument, that the parties knew that the highway department requires that repairs, such as those that the appellant undertook, be made between April 1 and October 31 of each year, when the weather is warm enough for the asphalt to be sealed properly. It is insisted that the parties' contract was intended to conform to that policy.

The trouble is, this argument runs squarely into the parol evidence rule. That is a rule of substantive law, which prevents a party from proving a prior or contemporaneous oral agreement that contradicts the written contract. *Hoffman v. Late,* 222 Ark. 395, 260 S.W. 2d 446 (1953). It is true that when the language of a contract is ambiguous, proof of oral negotiations is admissible to show that the language was intended to have "any particular meaning that the words will reasonably bear." *Kerr v. Walker,* 229 Ark. 1054, 321 S.W. 2d 220 (1959). But the rule does not allow a party to prove by oral testimony that clear and unambiguous words were subjectively intended to have a meaning not fairly attributable to them. The remedy in that situation is a suit for reformation of the contract. Restatement, Contracts, § 230 (1932).

The pivotal language in the contract before us is the stipulation that the quoted price is "with consideration the material will be used in the Spring of '74." The appellant insists that those words were chosen as a method of saying that the use of the material was expected to *begin* in the spring of 1974 and might continue, at the quoted price, at least until October 31 (and perhaps even longer if the work was proceeding at a reasonable rate). It may well be that the purchaser's representative had that meaning in mind when he endorsed his acceptance upon the letter-contract. If so, it was his obligation to insist that the contract be made to declare his understanding. Instead, he accepted language that cannot be reasonably interpreted to say what he now

contends that he intended. As we pointed out in *Hoffman* v. *Late, supra,* the justification for the parol evidence rule lies in the stability that it gives to written contracts; for otherwise a party might always testify that an oral understanding was contrary to the obligation he assumed in writing. Here the purchaser signed an essentially unambiguous agreement and must bear the consequences.

Affirmed.

FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I do not agree that appellants were entitled to judgment as a matter of law. The trial judge properly recognized that there was an issue as to the proper construction of the contract because of ambiguity. There was at least a latent ambiguity and the court submitted the question of the meaning of the parties to the jury by a correct instruction. It seems to me, however, that a cardinal rule of construction should have been stated to the jury and that appellant submitted a correct instruction which would have advised the jury that any doubt or ambiguity about the meaning of the contract was to be resolved against the party who prepared it. See *Manhattan Factoring Corp.* v. *Orsburn,* 238 Ark. 947, 385 S.W. 2d 785; *Stevenson* v. *Marques* 241 Ark. 321, 407 S.W. 2d 391.

The contention of appellee that a contract was not involved cannot be sustained. All of the testimony shows clearly that all parties, even when testifying, regarded it as a contract, not a quotation or unaccepted offer. The highway contract number was shown as the subject of the letter which constituted the agreement. The approximate number of gallons of asphalt for which the "quotation" was made was stated. It was specified that the material should meet Arkansas Highway Department specifications. The offer or "quotation" required an acceptance and expressed an appreciation, not for the opportunity to furnish a quotation, but for "this business." This is not a case where orders were invited or where appellee, the offeror, simply offered to supply whatever Arkansas Rock & Gravel Company ordered.

Appellee points up the question involved in construing the words "in the spring of '74" by referring to the duration of the "quote" as being limited "through the spring of 1974" or as being "for the spring of '74." They are treated in the majority opinion as if they read "during the spring of '74." Absent the circumstances surrounding the execution, I would agree that the words should be treated as the majority treats them. But, given the circumstances, the circuit court in my opinion correctly recognized that there was evidence from which it could be said that there was a latent ambiguity.

A latent ambiguity arises from facts not disclosed in the instrument. *Dorr v. School District No. 26,* 40 Ark. 237. It may imply a concealment of the real meaning or intention of the writer which does not appear upon the face of the words used until they are brought in contact with collateral facts. It arises, not upon the words as looked at in themselves, but upon those words when applied to that which they describe. It does not appear upon the face of the language used in the instrument, but occurs when the language appears to be clear, intelligible, unambiguous, but in fact, is shown by some intrinsic fact or extrinsic evidence to be uncertain in meaning. 3A CJS 409, Ambiguity; *Conkle v. Conkel,* 31 Ohio App. 2d 44, 285 N.E. 2d 883 (1972). In determining whether a latent ambiguity exists, a contract must be read in the light of what the parties intended as gathered from its language in view of all surrounding circumstances. *Arkansas Amusement Corp. v. Kempner,* 57 F. 2d 466 (8 Cir., 1932). See also, *Ellege v. Henderson,* 142 Ark. 421, 218 S.W. 831. Words not ambiguous in the abstract may, when considered in relation to the circumstances surrounding the making of it, create an ambiguity requiring interpretation. *Arkansas Amusement Corp. v. Kempner,* supra. *Paepcke-Leicht Lumber Co. v. Talley,* 106 Ark. 400, 153 S.W. 833. See also, *Ellege v. Henderson,* supra; *Easton v. Washington County Insurance Co.,* 391 Pa. 28, 137 A. 2d 332 (1957). .

In order for the court to determine whether a latent ambiguity exists, it is obviously necessary that it consider evidence of extraneous and collateral facts as to extrinsic circumstances. *Logan v. Wiley,* 357 Pa. 547, 55 A. 2d 366 (1947). The rule is well settled that extrinsic evidence is admissible to show that a latent ambiguity exists. *Hall v. Equitable Life Assurance Society,* 295 Mich. 404, 295 N.W. 204 (1940); *McCar-*

*ty* v. *Mercury Metalcraft Co.*, 372 Mich. 567, 127 N.W. 2d 340, cert. den., 380 U.S. 952, 129 N.W. 2d 854 (1964); *Widney* v. *Hess*, 242 Iowa 342, 45 N.W. 2d 233 (1951). See also, *Ellege* v. *Henderson*, supra; *Easton* v. *Washington County Ins. Co.*, supra; 3 Jones on Evidence 124, § 16:23. To discover a latent ambiguity, it is proper to go outside the instrument to ascertain whether the words used aptly fit the facts existing when the instrument was executed and the words used. *Widney* v. *Hess*, supra; *Queen Insurance Company of America* v. *Meyer Milling Co.*, 43 F. 2d 885 (8th Cir., 1930). In making the determination, courts may acquaint themselves with the persons and circumstances that are the subjects of the statements in the written instrument and place themselves in the position of the parties who made the contract, so as to view the circumstances as they did. *Wood* v. *Kelsey*, 90 Ark. 272, 119 S.W. 258.

Once it was shown that there was a latent ambiguity, oral evidence was admissible to explain it. *Ft. Smith Appliance Co.* v. *Smith*, 218 Ark. 411, 236 S.W. 2d 583; *Paepcke-Leicht Lumber Co.* v. *Talley*, supra; *Ellege* v. *Henderson*, supra. Testimony of the parties as to the meaning of the words is admissible. *Ellege* v. *Henderson*, supra. Parol evidence is also admissible to explain the situation and relation of the parties and the surrounding circumstances at the time of the execution of the contract. *Wynn & Sklar* v. *Phillips Oil Co.*, 254 Ark. 332, 493 S.W. 2d 439; *Clear Creek Oil & Gas Co.* v. *Bushmaier*, 165 Ark. 303, 264 S.W. 830.

The agreement was reached by acceptance on October 10, 1973. George Thweatt, officer of Ben M. Hogan & Company who became the chief managing officer of appellee, made the offer after negotiations with other representatives of Hogan. Thweatt was familiar with Arkansas Highway Department specifications that prohibited application of the asphalt materials between October 31 and April 1 or when the air temperature was below 60 degrees. He knew that the material was not to be used until springtime and that it could not be used before April 1 and that April 1 was not the beginning of "spring," whether spring be March, April and May or March 21 through June 20. He knew that appellee had fixed working days, i.e., 90, from the issuance of a work order by the highway department for completion of the contract. Ob-

viously, working days are not the same as calendar days. The price was increased from 13 cents to 14 cents, because appellee asked for a firm price. There was also evidence tending to show that Hogan, whose obligation appellee assumed, was interested in selling appellee crushed stone or chips and appellee bought chips from Hogan for use in performing this highway job.

John Harsh, who was employed by Arkansas Rock & Gravel Co. took a quotation on the asphalt in September, 1973 from Ivan Justice, a representative of Hogan, on the eve of the bidding for the highway contract. He delivered the price quotation to officials of Arkansas Rock & Gravel Company. One of these, Warren Simmons, talked with Justice on the telephone and asked for a firm figure. When Justice returned the new price Simmons asked that it be confirmed in writing and as a result the "contract letter" came into being. The jury might well have inferred that Arkanaas Rock & Gravel Company based its bid on the job on the agreement with appellee.

The work order was not issued until May 28, 1970. Simmons testified that had it not been for rain and other matters, the highway contract might have been completed by June 20, but that he had not expected to do so, even though they had planned theoretically to do so. He also said that he had not been made aware, in the telephone conversation, that the firm price was based upon the contract being completed in the spring of 1974.

Ivan Justice said that the sentence in question here was a sentence added to appellee's usual form of quotation and that the intent was "how soon it was to be used."

There was contradictory evidence from which the jury might have found that appellee was well aware that the quotation or firm price was based upon the use of all the material during the spring of 1974, but I agree with the circuit judge that there was a fact question. Under the circumstances, the contract could have meant only that the use was to commence after the beginning of the highway department's sealing season and continue during the time allotted for completion of the job.

I see no reason why the instruction I have previously referred to should not have been given. I would reverse the judgment because of its being refused.

I am authorized to state that Mr. Justice Byrd joins in this opinion.