Bailey L. WIENER;  Lee R.
Wiener, Appellees,

v.

EASTERN   ARKANSAS   PLANTING
COMPANY, an Arkansas General Part-
nership, West Memphis, Arkansas; N.S.
Garrott & Sons, an Arkansas General
Partnership, West Memphis, Arkansas;
Appellants,

AgriBank, FCB.

Bailey L. WIENER;  Lee R.
Wiener, Appellees,

v.

EASTERN   ARKANSAS   PLANTING
COMPANY, an Arkansas General Part-
nership, West Memphis, Arkansas; N.S.
Garrott & Sons, an Arkansas General
Partnership, West Memphis, Arkansas,

AgriBank, FCB, Appellant.

Nos. 91–2079, 91–2184.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 8, 1992.

Decided Sept. 3, 1992.

Joseph M. Rogers, West Memphis, Ark., argued, for N.S. Garrott & Sons and Eastern Arkansas Planting Co.

Mark G. Arnold, St. Louis, Mo., argued, for Farm Credit Bank.

Leslie H. Wiesenfelder, Washington, D.C., argued (R. Clinton Saxton, West Memphis, Ark., on the brief), for Bailey L. Wiener and Lee R. Wiener.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Agribank, FCB[1] appeals from the district court's[2] summary judgment granting Bailey and Lee Wiener specific performance on contracts to buy two farms, "New Hope" and "Louise," which the Bank's predecessor in interest, the Farm Credit Bank of St. Louis, also contracted to sell to Eastern Arkansas Planting Co. and N.S. Garrott & Sons, respectively. The Bank argues that the option under which the Wieners bought the farms contains a latent ambiguity, which properly interpreted, would give Eastern Arkansas and Garrott superior rights to the land. Eastern Arkansas and Garrott also appeal the judgment, arguing that they have a superior claim to the property by virtue of the Agricultural Credit Act of 1987, 12 U.S.C. § 2219a (1988), which they contend gives them a right of first refusal over the farms. We affirm the district court's judgment.

In 1983, Eastern and Garrott, two partnerships owned in whole or in part by members of the Garrott family, filed bankruptcy petitions seeking Chapter 11 reorganization. As part of their joint reorganization plan, they entered escrow agreements with the Bank under which the titles to New Hope (owned by Eastern) and Louise (owned by Garrott & Sons) would be held in escrow until the partnership had made certain payments to the Bank. In 1985 Eastern and Garrott defaulted on scheduled payments, and the Bank declared a default. In January 1986, the Bank sold the Wieners options to buy the farms. In February 1986, the escrow agent transferred the deeds to the Bank pursuant to the escrow agreement. Eastern and Garrott unsuccessfully sued the Bank for cancellation of the deeds, claiming that the Bank had not complied with the escrow agreement. This court approved the transfer of the deeds to the Bank. *Eastern Arkansas Planting Co. v. Federal Land Bank of St. Louis,* No. H-C-86-22 (E.D.Ark. Nov. 16, 1987), *aff'd,* 871 F.2d 1093 (8th Cir.1988) (per curiam).

However, the Garrott family remained in the farmhouses on the properties. The Bank applied for a Writ of Assistance to evict the Garrotts from the farmhouses, which Eastern and Garrott opposed, arguing that they were entitled to relief from

---

1. Agribank, FCB was substituted as the successor in interest to the Farm Credit Bank of St. Louis. We will refer to the two entities interchangeably as "the Bank."

2. The Honorable Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

the earlier judgment due to the Agricultural Credit Act of 1987, 12 U.S.C. § 2219, which they claimed gave them a right of first refusal over the farms. The district court granted the writ of assistance, *Eastern Arkansas Planting Co. v. Federal Land Bank of St. Louis*, No. H–C–86–22 (E.D.Ark. May 2, 1989), characterizing the right of first refusal argument as unripe because there was as yet no transaction to trigger such a right: "The court can see no authority for the proposition that the tenants have a right to remain in the dwellings.... As for a future sale or lease of those properties, the Court must assume that defendant will comply with all applicable law in the application, management, sale or lease of its holdings." *Id.* We affirmed, 894 F.2d 1341 (8th Cir.1989) (per curiam), stating that Eastern and Garrott had waived the first refusal argument by failing to raise it in their first appeal. Slip op. at 2.

While it was trying to evict the Garrott family, the Bank extended the Wieners' options on the farms several times. A contract dated December 29, 1989, extended one of the options until March 30, 1990, and stated that the option was "subject ... to the right-of-first-refusal provisions of the Farm Credit Act of 1971, as amended by the Agricultural Credit Act of 1987."

On March 1, 1990, the Bank sent Garrott and Eastern forms entitled "Notice of Right of First Refusal to Purchase Property," which gave Eastern and Garrott the right to make offers to buy the two farms.

The Wieners promptly exercised the option to buy the Louise farm on March 14, 1990, before Garrott exercised its right of first refusal on March 22, 1990. On March 26, 1990, the Bank returned to the Wieners the check they had tendered, notifying them that the Bank considered the Wieners' option mooted by Garrott's exercise of first refusal rights. On April 4, the Bank accepted Garrott's offer.

Instead of promptly exercising the option on New Hope Farm, on March 21, 1990, the Wieners and the Bank once again extended the option to buy the New Hope Farm until April 30, 1990, still "subject ... to the right-of-first-refusal provisions" of the Agricultural Credit Act of 1987. Eastern offered to buy the New Hope farm on March 27, and the Bank accepted Eastern's offer on April 4.[3] Not until April 12, 1990, did the Wieners exercise their option to buy the farm. The Bank promptly returned the Wieners' earnest money.

The Wieners then sued the Bank, Eastern, and Garrott asking for specific performance of their option contract. Eastern and Garrott counterclaimed for intentional interference with contract, and cross claimed against the Bank for specific performance of their contracts to buy the farms, or for damages.

The Wieners, Eastern and Garrott all moved for summary judgment. The district court granted the Wieners summary judgment, holding that Eastern and Garrott had no right of first refusal under the Agricultural Credit Act of 1987, because the Bank acquired title to the farms two years before the Act became effective on January 6, 1988. *Wiener v. Farm Credit Bank of St. Louis*, 759 F.Supp. 510, 515–16 (E.D.Ark.1991). The court held that the language in the Act making property "that is acquired" subject to a right of first refusal was intended to apply to property acquired by the Bank after the effective date. *Id.* at 516. The Wieners also argued that Garrott and Eastern were barred by res judicata and collateral estoppel from asserting a right of first refusal, but the district court did not reach these issues because it had already held there was no such right. *Id.* at 516–17.

The court rejected Garrott's and Eastern's attack on the sufficiency of consideration to support the extension of the Wieners' options, holding that the mutual prom-

---

**3.** Eastern and Garrott both entered contracts to sell the farms to third parties immediately upon exercise of their rights of first refusal. *Wiener v. Farm Credit Bank of St. Louis*, 759 F.Supp. 510, 523 (E.D.Ark.1991). We are not asked to decide whether the Agricultural Credit Act of 1987 was intended to apply in such a case. S.Rep. No. 230, 100th Cong., 1st Sess. 35 (1987) (right of first refusal is "non-transferable and limited solely to family farmers").

ises of the Bank and the Wieners were sufficient consideration. *Id.* at 517.

The court also rejected the Bank's argument that the language in the option should be interpreted to subordinate the option to a right of first refusal *whether or not* the Agricultural Act of 1987 created any such right. The court held that the option contract was unambiguous and that the Wieners' rights were only subject to a right of first refusal arising under the Act—of which there was none. *Id.* at 518–19.

As between Eastern's and Garrott's contractual rights to buy the farms, on the one hand, and the Wieners' rights under their options, the court found that the Wieners had superior rights in both farms. The Wieners exercised their option on the Louise farm before the Bank accepted Garrott's offer; therefore, the Wieners' rights to the Louise farm were superior. *Id.* at 522. The more difficult case was the New Hope farm, since Eastern had contracted with the Bank to buy it before the Wieners exercised their option. The court found that Eastern had notice of the Wieners' option before it made its offer, and that therefore the Wieners, not Eastern, were entitled to specific performance. *Id.* at 522.

The court dismissed Eastern and Garrott's cross claim against the bank for enforcement of statutory rights under the Agricultural Credit Act of 1987, holding that it lacked subject matter jurisdiction to enforce any such right under *Zajak v. Federal Land Bank of St. Paul,* 909 F.2d 1181 (8th Cir.1990). 759 F.Supp. at 523. The court also dismissed Eastern and Garrott's counterclaim for tortious interference with contract for failure to state a claim. *Id.* at 524.

As to Garrott and Eastern's cross-claim against the Bank for money damages for breach of contract, the court declined to enter summary judgment. *Id.* at 523–24.

## I.

■ Eastern and Garrott attack the validity of the Wieners' options, arguing that the Wieners had no rights in the farms at the time Eastern and Garrott entered contracts to buy the farms. Eastern and Garrott argue that the option extensions were not supported by new consideration.

This argument need not detain us long. The Wieners bought Louise under an extension signed on December 29, 1989, of an option due to expire on December 31, 1989. Similarly, they bought New Hope under an extension signed March 21, 1990, of an option due to expire on March 30. The Wieners had paid $5,000 for each of the options and were entitled to rescind the option and to get that money back if the Bank was not able to perform its duties under the option contract, including providing a title insurance commitment and delivering possession. The Bank concedes that it was not able to obtain a clean title insurance commitment. By taking extensions of the options instead of demanding return of their cash, the Wieners effectively put up $5,000 for each extension. This benefit was sufficient consideration to support the extensions of the options.

## II.

■ Eastern also claims that it is entitled to priority over the Wieners in the New Hope farm because the Bank and Eastern entered a contract for sale of New Hope on March 28, before the Wieners exercised their option on April 12. The district court concluded, on the basis of language in *Trieschmann v. Blytheville Steam Laundry,* 148 Ark. 237, 230 S.W. 3 (1921), that under Arkansas law, an option supported by consideration can give the optionee superior rights to a subsequent purchaser who has notice of the option. *Wiener,* 759 F.Supp. at 522. The district court concluded that Eastern had notice of the option, since before the Bank accepted Eastern's offer, Eastern offered the Wieners $62,000 in exchange for relinquishment of their option rights. 759 F.Supp. at 521. The record supports the district court's conclusion that Eastern had notice of the option. Our independent review of *Trieschmann, see Salve Regina College v. Russell,* — U.S. ——, ——, 111 S.Ct. 1217,

1221, 113 L.Ed.2d 190 (1991) (appellate courts, without giving deference, conduct de novo review of state law questions), convinces us that the district court interpreted it correctly, and therefore, we conclude that the Wieners, not Eastern, had the right to specific performance of the Bank's contract to sell New Hope farm.

### III.

■ Eastern and Garrott argue that the Agricultural Credit Act of 1987, 12 U.S.C. § 2219a, provides them a right of first refusal over the farms. Even if the Act does create such a right, Eastern and Garrott would not be able to recover directly under the Act. *See Cupples Brothers v. Federal Land Bank of St. Louis,* 951 F.2d 883, 886 (8th Cir.1991) (no private cause of action under section 2219a). However, the terms of the Wieners' options specifically subordinated those options to any first refusal rights existing under the statute.

The crucial question under the Agricultural Credit Act of 1987, specifically 12 U.S.C. § 2219a(a), is whether the Act's right of first refusal provisions apply to property that had already been foreclosed on and was in the inventory of a farm credit system institution at the time the Agricultural Credit Act was enacted in January 1988. The only clue in the Act itself is the following language: "Agricultural real estate *that is acquired* by an institution of the System as a result of a loan foreclosure ... shall be subject to the right of first refusal of the previous owner to repurchase ... the property...." 12 U.S.C. § 2219a(a) (emphasis added).

Eastern and Garrott argue that the tense of the phrase "that is acquired" is temporally neutral, and they array legislative history, case law, and administrative interpretations to support this argument.

First, Eastern and Garrott quote the remarks of Senator Boren, who explained that the right of first refusal provisions had been put into the Senate bill to remedy a situation in which banks refused to sell a foreclosed farmer's property back to him simply because he had previously defaulted on a loan, even though he might have ready money at hand to buy the farm. Senator Boren stated: "The provision in S. 1665 regarding the right of first refusal will ensure that this never happens again. Under this provision, all property *that has been* or is acquired by institutions of the Farm Credit System is subject to the right of first refusal." 133 Cong.Rec. 33,470 (1987) (emphasis added).[4]

Though Senator Boren's language does seem to contemplate retroactive application, the Wieners cite a far more crucial episode from the legislative history. The Senate Committee Report states:

> The members considered new language for the right of first refusal provision ... Senator Boschwitz argued that the language would be burdensome to the System, that the right should only be extended for foreclosure and not for voluntary conveyance of property, and that it should not apply to land already held in inventory.

S.Rep. No. 230, 100th Cong. 1st Sess. 71 (1987). The Wieners reveal the basis for the committee report by citing a transcript of a committee mark-up on the legislation in which Senator Boschwitz remarked that the language *"was acquired"* in the draft of Senate Bill No. 1665 should be changed to *"is acquired"*: "First of all, this right of first refusal is going to be on agricultural real estate that was acquired. It is not in the future. It should be 'is acquired' after the date of the enactment of this Act, I suppose." Senate Subcommittee on Agricultural Credit of the Committee on Agriculture, Nutrition, and Forestry, Markup on Farm Credit Assistance Board at 97

---

4. Eastern and Garrott also point to language in the conference report, H.R.Conf.Rep. No. 490, 100th Cong., 1st Sess. 176 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2723, 2956, 2971, which states that the right of first refusal applies to "agricultural real estate acquired by the institution." The Garrotts contend that the omission of the present tense "is" in that phrase indicates that the present tense in the language of the Act was not meant to convey a temporal meaning. *See also* S.Rep. No. 230, 100th Cong., 1st Sess. 4 (1987) (Title IV gives borrowers right of first refusal on land "that has been foreclosed on").

(October 21, 1987). The Wieners also cite a later discussion in which Senator Boschwitz asked a witness whether the bill would encourage farmers to dump their bad bargains on the land banks in order to buy them back at a cheaper price:

> Mr. Sims: I think the only way you solve that problem [only covering farms lost to foreclosure, rather than farms voluntarily ceded back to the Bank] is stopping after foreclosure.
>
> Sen. Boschwitz: And changing the word "was" to "is".
>
> Mr. Sims: And changing—that word is very important.
>
> Sen. Boschwitz: "Was" to "is".
>
> Mr. Sims: Yes. "Was" would mean all land in current inventory. "Is" means from here forward.

*Id.* at 123.

Since the "is acquired" language appears in the enacted law, it is evident that the Committee accepted Senator Boschwitz's view on this point. This history is extremely telling and appears to us to be the most persuasive evidence of legislative intent.

Eastern and Garrott also point to *Martinson v. Federal Land Bank of St. Paul*, 725 F.Supp. 469 (D.N.D.1988), *appeal dismissed*, No. 88–5202 (8th Cir. May 30, 1989), which held that the phrase " 'that is acquired' describes a type of property (acquired real estate) and is temporally neutral in that it is not referring to time." *Id.* at 471.

However, on this point we are persuaded by the reasoning of the Third Circuit in *Reuther v. Trustees of Trucking Employees*, 575 F.2d 1074 (3d Cir.1978), in which Judge Aldisert considered the question of whether a clause in ERISA applied to contributions made before its effective date. As one of the bases of his holding, he stated that the present tense of the phrase "contribution which is made by an employer," shows that the phrase governs contributions made after the date of enactment, not before. *Id.* at 1077. The use of the present tense in section 2219a is analogous to the language at issue in *Reuther* and should be interpreted in light of *Reuther*.

Finally, the Garrotts rely on the interpretation of the statute by the Farm Credit Administration, which stated in the Federal Register that "if an institution had 'acquired property' ... that had not been sold as of January 6, 1988, the previous owner should be afforded his first refusal rights." 53 Fed.Reg. 35,428–29 (1988). Of course, the administrative agency's interpretation of a statute is binding only when Congress has not spoken. *See Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). In light of our conclusion that Congress intended the "is acquired" language to apply only to transactions after the effective date of the Act, the agency's contrary interpretation is not determinative.

### IV.

The Bank argues that the option contracts contain a latent ambiguity, and that in light of extrinsic evidence about the parties' intentions the contract should be construed to subordinate the Wieners' option to a right of first refusal in Eastern and Garrott, whether or not the Agricultural Credit Act of 1987 created such a right.

The Bank contends that the language in the option extension, "subject ... to the right-of-first-refusal provisions of the Farm Credit Act of 1971, as amended by the Agricultural Credit Act of 1987," is ambiguous in light of the circumstances under which the parties agreed to it. According to the Bank, the parties agreed to the language as a way of resolving a title insurance problem.

One of the conditions of the option agreement was that the Bank had to provide a commitment for title insurance showing marketable title to the farms. However, the title insurance companies perceived that it was unclear whether Eastern and Garrott had any right of first refusal under the statute and whether this court's decision in the writ of assistance case, *Eastern Arkansas Planting Co. v. Federal Land Bank of St. Louis*, 894 F.2d 1341 (8th Cir.1989), had held them to have waived any such right. As a result of these uncer-

tainties, the insurers would not write a clean title insurance commitment without proof that the Bank had offered Garrott and Eastern a right of first refusal.

Meanwhile, the Wieners' options were set to expire on December 31, 1989. Rather than closing at that time, the Wieners chose to get extensions of the options. The Bank argues that the Wieners' decision was based on the fact that they could not get title insurance, but the Wieners contend it was because the Garrott family had not yet been evicted from the farmhouses on the two farms.

At the time of the December 1989 extension, the Bank insisted upon including language concerning the right of first refusal, and the Wieners chose the language that was ultimately included from among alternative clauses drafted by the Bank.

The Bank argues that, given the circumstances at the time the parties agreed to the "subject ... to the right of first refusal provisions of the Agricultural Credit Act of 1987" language, the language has to be read to mean "subject to a right of first refusal similar to that provided in the Agricultural Credit Act of 1987, whether or not the statute creates such a right in this case." The Bank argues that this is the only possible meaning the parties could have intended, because only by offering Garrott and Eastern the opportunity to buy the farms could the Bank satisfy the title insurers and obtain a clean commitment.[5]

Before entertaining the Bank's argument about what the extrinsic evidence shows about the parties' intent, we must ascertain whether we may properly consider such evidence in construing the contract.

Under Arkansas law, the court makes a threshold determination as to whether a contract is ambiguous. *C & A Constr. Co. v. Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302, 303 (1974); *Pizza*

*Hut of America, Inc. v. West Gen. Ins. Co.*, 36 Ark.App. 16, 816 S.W.2d 638, 641 (1991). If it is not ambiguous, extrinsic evidence about the parties' intent cannot be admitted. *B.G. Coney Co. v. Radford Petroleum Equip. Co.*, 287 Ark. 108, 696 S.W.2d 745, 747 (1985); *C & A Constr. Co.*, 509 S.W.2d at 303. Ambiguities may be either patent or latent. *C & A Const. Co.*, 509 S.W.2d at 303. A patent ambiguity is an ambiguity which appears on the face of the contract, *id.*, which no one contends exists in this case. The Bank contends that there is a latent ambiguity, but the Bank misconceives what a latent ambiguity is. In Arkansas cases finding a latent ambiguity, there is a facially unambiguous contract that for one reason or other cannot be applied without more information about what the parties intended. For instance, in *Williams v. J.W. Black Lumber Co.*, 275 Ark. 144, 628 S.W.2d 13 (1982), a contract called for the sale of timber on four parcels of property marked in an aerial photograph, "640 acres, more or less." *Id.* at 15. The four parcels turned out to be only 330 acres. This was a latent ambiguity, since "a latent ambiguity is one developed by extrinsic evidence, where the particular words, in themselves clear, apply equally well to two different objects." 628 S.W.2d at 15 (quoting *University City v. Home Fire & Marine Ins. Co.*, 114 F.2d 288, 295 (8th Cir.1940)).

In this case, however, the difficulty does not arise in applying the language of the contract to the facts. Instead, the Bank contends that the language actually used in the contract is an inaccurate rendition of what the parties actually meant. The Arkansas Supreme Court rejected such an argument in *Arkansas Rock & Gravel Co. v. Chris–T–Emulsion Co.*, 259 Ark. 807, 536 S.W.2d 724 (1976), stating that a party may not prove by parol evidence "that clear and unambiguous words were subjectively intended to have a meaning not fairly attributable to them. The remedy in that

---

**5.** The Wieners argue that the clause does make sense under the circumstances when read only to subject the Wieners' rights to any *statutory* right of first refusal; that reading would render the clause meaningful because it would assure that the Bank was not under inconsistent contractual and statutory duties to convey the

farms to two different buyers. *Cf.* S.Rep. No. 230, 100th Cong., 1st Sess. 35 (1987) (In the case of failure of a System institution to comply with right of first refusal, title to the land would not be clouded and sale to the third party would stand, but the bank might have to pay damages to the previous owner).

situation is a suit for reformation of the contract." *Id.* 536 S.W.2d at 727. *Accord Green v. Ferguson,* 263 Ark. 601, 567 S.W.2d 89, 91 (1978); *Bone v. Refco, Inc.,* 774 F.2d 235, 241 (8th Cir.1985).[6]

The language in the option extension clearly subordinates the Wieners' rights only to such right of refusal as might arise from the statute. We have already said that the statute conferred no such right on Eastern and Garrott. Upon determining that the language was *not* ambiguous and that as written it gave Eastern and Garrott no right of first refusal, the district court acted properly in entering summary judgment for the Wieners on their claim for specific performance.

## V.

Eastern and Garrott argue that the district court erred in dismissing their counterclaim against the Wieners for tortious interference with contract. In light of our holdings on the other issues, we conclude the district court acted correctly in dismissing the counterclaim.

We affirm the judgment of the district court.

---

**6.** In their reply brief, Eastern and Garrott join in the Bank's parol evidence argument, stating that they are not bound by the parol evidence rule because they are strangers to the contract. *See Silvicraft, Inc. v. Southeast Timber Co.,* 34 Ark.App. 17, 805 S.W.2d 84, 87 (1991) (en banc). We generally decline to consider issues raised for the first time in reply briefs, *Parmenter v.*

*FDIC,* 925 F.2d 1088, 1093 (8th Cir.1991), and there is no adequate reason to deviate from that rule in this case. In addition, in our review of the district court record, we found no indication that Eastern and Garrott made this argument in the court below—another reason not to consider it on appeal. *See Clarke v. Bowen,* 843 F.2d 271, 273 (8th Cir.1988).