924

5-632                                        278 S. W. 2d 114

Opinion delivered April 4, 1955.

[Rehearing denied May 16, 1955.]

*Catlett & Henderson* and *Davis & Allen,* for appellant.

*McMillan & McMillan* and *Wright, Harrison, Lindsey & Upton,* for appellee.

J. Seaborn Holt, J. This is a suit for specific performance.

December 8, 1952, Roy Sturgis and his wife, Christine, fee simple owners of SE¼ of the NE¼ of Section 21, in Township 2 North, Range 14 West, Pulaski County, Arkansas, which land is on Shinall Mountain, west of Little Rock, (40 acres), granted to appellant, T. K. Barton, as Trustee, for a consideration of $100.00, an option contract in writing to purchase, at a price of $2,900, the above described land, together with an easement for ingress to and egress from said property, over an existing road across the S½ of the N½ of Section 22, Township 2 North, Range 14 West, Pulaski County. As indicated, at the time the option was executed, Barton paid $100.00 and Barton was allowed until October 22, 1953,

to exercise the option. The option contained these further provisions:

"1. Barton shall have the right to exercise the option herein granted at any time prior to October 22, 1953. Barton may exercise the option hereby granted by depositing in the United States mail written notice to Grantors to that effect, with postage prepaid, to be forwarded by registered mail, addressed to Roy Sturgis, 702 First National Bank Building, Dallas, Texas. The option hereby granted shall be deemed to be exercised when said notice is deposited in the United States mail as aforesaid.

"2. Within thirty (30) days of the date of the exercise of said option by Barton, Grantors shall execute, acknowledge and deliver to Barton at Little Rock, Arkansas, a warranty deed conveying to him the land hereinbefore described, together with the easements hereinbefore mentioned, in which Christine Sturgis shall release all of her right of dower and homestead in and to the property thereby conveyed.

"3. Upon the delivery of said deed, Barton shall pay to said Grantors as the purchase price for said land the sum of Two Thousand Nine Hundred and No/100 Dollars ($2,900.00) in cash.

"4. Barton's rights hereunder shall not be assigned."

At the time the option was executed, Barton was Vice President and General Manager of appellant, Arkansas Radio and Equipment Co., which was then operating Radio Station KARK of Little Rock, and the option was in fact taken by him as trustee for that company, although the company was not named in the option.

On June 15, 1953, there was pending before the Federal Communications Commission application of Arkansas Radio and Equipment Co. to construct a tower and equipment on the land here involved to transmit television broadcasts on Channel 4. On this same date, the Arkansas Television Company, — which operates KTHS, — had made application to the Federal Commis-

sion, above, for permission to erect, on another site than the one involved here, a tower and equipment to transmit television broadcasts on this same Channel 4. On this date (June 15, 1953) appellant, Arkansas Radio and Equipment Co., and Arkansas Television Co. entered into an agreement by which Arkansas Television Co. would withdraw its application for a permit to broadcast on Channel 4 and apply for a permit to broadcast on Channel 11. In consideration for this promise, Arkansas Radio and Equipment Co. agreed that if it obtained a permit to broadcast on Channel 4, it would permit Arkansas Television Co. to use jointly with it, for broadcasting on Channel 11, the tower to be constructed on the land involved here by Arkansas Radio and Equipment Co., or should Arkansas Radio and Equipment Co. fail to obtain its permit to construct and operate a television station, and Arkansas Television Co. obtained the permit which it would seek to broadcast on Channel 11, then appellant, Arkansas Radio and Equipment Co., would permit Arkansas Television Co. to construct and operate its television tower and equipment on the land here involved.

On the next day (June 16, 1953) Arkansas Television Co. withdrew its Channel 4 application from the Communications Commission and applied for a permit to telecast on Channel 11. On June 17th, following, the Communications Commission issued a permit to Arkansas Radio and Equipment Co. to construct and operate a television tower and broadcasting equipment on the land here involved for broadcasting on Channel 4.

Thereafter, on August 17, 1953, Barton, by letter, in accordance with option provision, above, informed appellees that he elected to exercise the option to purchase the land here involved, together with the easement of ingress and egress.

August 26, 1953, Roy Sturgis (appellee), having learned of the agreement above between appellant, Arkansas Radio and Equipment Co. and Arkansas Television Co., notified Barton, by letter, that said agreement

violated the terms of the option contract and therefore, that he considered the option void, that he was not bound by its terms, and refused to deliver a deed conveying the 40 acre tract involved here.

It further appears that by permission of the Federal Communications Commission, appellant, Arkansas Radio and Equipment Co., installed temporary television equipment at another location at a cost of $15,615, in excess of the amount it would have expended had it been permitted to construct originally on the land here involved. In fact, it was stipulated that in the event we should hold that appellants are entitled to specific performance of the option contract of sale and purchase, then appellants would be entitled to recover damages in the amount of $15,615.

On November 19, 1953, appellants filed this suit (and later an amendment to their complaint) in which they sought specific performance of the option contract of sale and purchase and $15,615 damages. Appellees answered with a general denial and affirmatively pleaded as a defense the above agreement between appellant, Arkansas Radio Equipment Co., and Arkansas Television Co., which they alleged was a breach against assignment of the option. From the decree dismissing appellants' complaint for want of equity is this appeal.

The primary and decisive issue presented is, say appellees, whether "by the agreement of June 15, 1953, Barton and KARK assigned to KTHS certain rights in this land, which was in direct violation of their option that they should not assign; that thereby they breached their contract and having breached the right of their option contract, they are not entitled at this time to specific performance. As I say, to me that is the primary and I think the sole main issue in the lawsuit." We have concluded that the agreement was not a breach of the option contract and hold that the trial court erred in not granting appellants' prayer for specific performance.

As we read this option contract and consider it from its four corners, as we must, its terms appear clear and

unambiguous. Therefore, we hold that all conversations, letters and documents, which it appears were exchanged between Barton and Sturgis, and offered in proof, were merged into the completed option contract, in the absence of fraud, and were inadmissible under the parol evidence rule. We find no evidence of fraud in this record. The principle of law is well established that parol evidence to explain the relation of the parties at the time a written instrument is executed is admissible only to ascertain the true meaning of such instrument, when by its words or terms it appears to be ambiguous.

In the recent case of *Ben Pearson, Inc.* v. *John Rust Co., et al.,* 223 Ark. 697, 268 S. W. 2d 893, we said: " ' (The parties) having made this contract in clear and ambiguous language, it is the duty of the court to construe it according to the plain meaning of the language employed, and not to enlarge or extend its terms on any theory.' *Rains Coal Corporation* v. *Southern Coal Company, Inc.,* 202 Ark. 1077, 155 S. W. 2d 348, 352.

" 'The first rule of interpretation is to give to the language employed by the parties to a contract the meaning they intended. It is the duty of the court to do this from the language used where it is plain and unambiguous.' *Lee Wilson & Co.* v. *Fleming,* 203 Ark. 417, 156 S. W. 893, 894.''

The effect of this option contract was that appellees (Sturgises) for a valuable consideration offered to convey the land and easement described therein by warranty deed, if Barton, prior to October 22, 1953, accepted their offer therein made to sell the property. Clearly, this option to purchase would have been assignable by Barton, but for the following provision in the option: ''Barton's rights hereunder shall not be assigned.'' This provision only prevented Barton from assigning to anyone else the option contract should he, Barton, elect not to purchase the land here involved under the terms of the option. This provision does not suggest, or require, that Barton was to receive a deed to the land purchased containing any restrictions whatsoever with respect to the

use that he, or his successors in title, might choose to make of it. The moment that Barton elected to purchase under the option, he was entitled to an unrestricted warranty deed from appellees.

It appears that Mr. Sturgis had had much experience in dealing in Arkansas real estate since 1935. He testified at the time of trial that he was the owner of approximately 160,000 acres of timber land in thirty-one or thirty-two counties of Arkansas. Before signing this option contract, he returned it two or three times to Barton for revamping to comply with his, Sturgis', demands. Had it been his desire and intention that the deed, which he and his wife would deliver to Barton, should contain a restrictive clause, limiting the use of the land here involved, it would have been an easy matter to have demanded and required that such provision be embodied in this option. This he did not do.

Accordingly, the decree is reversed and the cause remanded with directions to enter a decree consistent with this opinion.