**Bailey L. WIENER and Lee R. Wiener, Plaintiffs,**

v.

**FARM CREDIT BANK OF ST. LOUIS, Eastern Arkansas Planting Co., and N.S. Garrott & Sons, Defendants.**

**Civ. No. J–C–90–81.**

United States District Court, E.D. Arkansas, Jonesboro Division.

Jan. 24, 1991.

R. Clinton Saxton, Saxton & Ayres, West Memphis, Ark., Leslie H. Wiesenfelder, Dow, Lohnes & Albertson, Washington, D.C., for Wiener.

Joe M. Rogers, Hale, Fogleman & Rogers, West Memphis, Ark., for Eastern Ark. Planting and N.S. Garrott & Sons.

David Solomon, Helena, Ark., for Farm Credit Bank of St. Louis.

## MEMORANDUM OPINION AND ORDER

EISELE, Chief Judge.

Before the Court are plaintiffs' Motion for Summary Judgment; Motion for Partial Summary Judgment filed by defendants Eastern Arkansas Planting Co. and N.S. Garrott & Sons; and Motion for Leave to Amend Cross–Claim filed by defendant N.S. Garrott & Sons. The parties have responded to the Motions. For the reasons discussed below, plaintiffs' Motion for Summary Judgment will be granted and the Summary Judgment Motions by defendants will be denied. Defendant Garrott's Motion to Amend Cross–Claim will be granted.

## I. HISTORY

This litigation centers around two parcels of farmland formerly owned by defendants Eastern Arkansas Planting Co. (Eastern) and N.S. Garrott & Sons (Garrott). The Farm Credit Bank of St. Louis (Bank) currently holds title to the farms.[1]

In 1983, Eastern and Garrott filed petitions in bankruptcy seeking Chapter 11 reorganization. The bankruptcy plan subsequently approved by the Bankruptcy Court incorporated an escrow agreement between the Bank and Eastern and Garrott. The agreement provided for scheduled farm mortgage payments to be made by Eastern and Garrott to the Bank, and it also provided that the deeds to the farms would be held by an escrow agent until the consummation of the plan. Finally, the escrow agreement provided that should Eastern and Garrott default on the scheduled mortgage payments, the escrow agent would transfer the deeds to the farms to the Bank.

Eastern and Garrott failed to make the payments for the year ended December 31, 1985, and the Bank declared a default. In January, 1986, the Bank and plaintiffs entered into contracts providing plaintiffs with options to purchase the farms. In February, 1986, the escrow agent transferred the deeds to the Bank. Eastern and Garrott filed suit against the Bank in March, 1986, seeking cancellation of the deeds and contending that the Bank failed to comply with the terms of the escrow agreement. This Court found that the Bank complied with the escrow agreement and affirmed the transfer of the deeds to the Bank. *Eastern Arkansas Planting Co. v. Federal Land Bank of St. Louis*, No. H–C–86–22 (Order of November 16, 1987) (Roy, J.). The Eighth Circuit Court of Appeals summarily affirmed that decision. *Eastern Arkansas Planting Co. v. Federal Land Bank of St. Louis*, 871 F.2d 1093 (8th Cir.1988) (per curiam).

Eastern and Garrott maintained possession of the houses located on the farms while the propriety of the farm deeds was being litigated. The Bank applied for a Writ of Assistance to recover possession of the farm houses, and Eastern and Garrott responded with pleadings in opposition to the Writ and a Fed.R.Civ.P. Rule 60(b)(5) motion for relief from the prior judgment concerning the farm deeds. Eastern and Garrott argued in the Rule 60(b)(5) Motion that the right of first refusal contained in the Agricultural Credit Act of 1987, 12 U.S.C. § 2219a (Act), required that they be given relief from the prior judgment of this Court. This Court issued the Writ on May 2, 1989. *Eastern Arkansas Planting Co. v. Federal land Bank of St. Louis*, No. H–C–86–22 (Order of May 2, 1989) (Roy, J.). The Eighth Circuit Court of Appeals affirmed this Court's Order granting the Writ of Assistance. *Eastern Arkansas Planting Co. v. Federal Land Bank of St. Louis*, 894 F.2d 1341 (8th Cir.1989) (per curiam).

During the pendency of the litigation discussed above, the Bank and plaintiffs extended on a number of occasions plaintiffs' option-to-purchase contracts with respect to the farms. The extension dated December 31, 1989, which extended the options until

---

1. The "New Hope" farm is located in St. Francis County, Arkansas and was owned by defendant Eastern. The "Louise" farm is located in Crittenden County, Arkansas and was owned by defendant Garrott. The two parcels of land will be collectively referred to as "the farms" unless circumstances require otherwise.

March 30, 1990, stated that the options were "subject to the other terms and provisions contained in the paragraph in said option entitled 'Exercise of Option,' as amended in paragraph 1 of said agreement dated March 27, 1986 ..." Plaintiffs' Exhibit 5 to Statement of Material Facts, Docket No. 18. The December 31, 1989 option extension also stated, for the first time, that plaintiffs' options were subject to "the right-of-first-refusal provisions of the Farm Credit Act of 1971, as amended by the Agricultural Credit Act of 1987." *Id.*

On March 1, 1990, the Bank sent to Garrott and Eastern forms entitled "Notice of Right of First Refusal to Purchase Property." These forms offered Garrott the right to purchase the Louise farm for $1,522,-000.00, Plaintiffs' Exhibit 16, and Eastern the right to purchase the New Hope farm for $1,565,000.00, Plaintiffs' Exhibit 17.[2]

On March 14, 1990, plaintiffs, in conformity to requirements of the option agreement, sent to the Bank a cashier's check in the amount of $139,500.00 and notified the Bank that "this letter constitutes an exercise of [the option to purchase the Louise farm]." Plaintiffs' Exhibit 18. On March 22, 1990, Garrott signed the "Offer to Purchase Property" attached to the Bank's notice of right of first refusal to purchase the Louise farm. Defendants' Exhibit M to Statement of Material Facts, Docket No. 29. Thereafter, on March 26, 1990, the Bank returned plaintiffs' cashier's check and notified plaintiffs that "[Garrott's] exercise of the right of first refusal has mooted your tender of these funds." Plaintiffs' Exhibit 19.

Plaintiffs' option to purchase the New Hope farm was to expire on March 30, 1990. On March 21, 1990, plaintiffs and the Bank extended plaintiffs' option to purchase the New Hope farm until April 30, 1990, "subject ... to the right-of-first-refusal provisions of the Farm Credit Act of 1971, as amended by the Agricultural Credit Act of 1987." Plaintiffs' Exhibit 20. On

March 27, 1990, Eastern signed the "Offer to Purchase Property" attached to the Bank's notice of right of first refusal to purchase the New Hope farm. Defendants' Exhibit N.

The Bank on or about April 4, 1990, accepted the offers of Garrott and Eastern to purchase the farms under the right of first refusal notices. *See* Defendants' Exhibits O and P. On April 12, 1990, plaintiffs sent to the Bank a cashier's check in the amount of $146,620.00 and notified the Bank that "this letter constitutes an exercise of [the option to purchase the New Hope farm]." Plaintiffs' Exhibit 21. On April 13, 1990, the Bank returned plaintiffs' cashier's check and notified plaintiffs that "[Eastern's] exercise of the statutory right of first refusal has mooted your tender of those funds in an attempt to exercise [the option to purchase the New Hope farm]." Plaintiffs' Exhibit 22.

Plaintiffs then filed this specific performance lawsuit against the Bank, Eastern and Garrott. Eastern and Garrott filed counterclaims against plaintiffs, seeking damages for intentional interference with contract and punitive damages. Eastern and Garrott's counterclaims state that plaintiffs "intentionally and maliciously interfered with [Eastern and Garrott's rights] by advising third parties with whom [Eastern and Garrott were] negotiating to sell said property upon acquisition under the right of first refusal that [Eastern and Garrott] had no rights of first refusal." Defendants' Counterclaims, Docket Nos. 5 and 6, at para. 8. Eastern and Garrott claim damages of $150,000.00 and $440,000.00, respectively, for "interference [with Eastern and Garrott's] ability to contract with third parties to sell [the] property in issue once it was acquired under its right of first refusal." *Id.* at para. 9.

Eastern and Garrott also filed cross-claims against the Bank, seeking specific performance of the right of first refusal, breach of contract damages and punitive damages. In the cross-claims for breach of

---

**2.** Plaintiffs' "Option to Purchase Real Estate" contracts with the Bank provide that plaintiffs' purchase prices for the Louise and New Hope farms are $1,445,000.00 and $1,516,200.00, respectively. Plaintiffs' Exhibit 2, Docket No. 18.

contract, Eastern and Garrott pray for compensatory damages of $208,000.00 and $358,000.00, respectively, for "the difference between the [right of first refusal] contract price [with the Bank] and the price [Eastern and Garrott have] contracted to sell the property...." Defendants' Cross-Claims, Docket Nos. 5 and 6, at para. 12.

Plaintiffs and Eastern and Garrott have moved for summary judgment. The Bank has not so moved, but it has responded in opposition to the summary judgment motions of the other parties. The Bank's response to the summary judgment motions will be treated as a motion to dismiss. Plaintiffs and Eastern and Garrott have raised and extensively briefed a number of interconnected issues in the summary judgment motions. These issues, however, can be condensed into six dispositive questions:

1. Whether the Agricultural Credit Act of 1987, specifically 12 U.S.C. § 2219a, provides Eastern and Garrott with a right of first refusal with respect to the farms;

2. Whether and to what extent the option-to-purchase contracts between plaintiffs and the Bank are valid;

3. Whether and to what extent the contracts to purchase the farms between Eastern and Garrott and the Bank are valid and enforceable regardless of plaintiffs' option contracts and independent of the Act's right of first refusal;

4. Whether the cross-claims of Eastern and Garrott against the Bank are valid and enforceable in this Court;

5. Whether the counter-claims of Eastern and Garrott against plaintiffs are valid and enforceable in this Court; and

6. Whether either plaintiffs or Eastern and Garrott are entitled to specific performance of their respective contracts as against the Bank.

**3.** Before getting into a discussion of the arguments, it should be noted that Eastern and Garrott and the Bank are not truly dealing with the "right of first refusal" provided by section 2219a of the Act. If they were, Eastern and Garrott would be asserting their rights to purchase the farms *at plaintiffs' option prices* rather than the prices agreed upon by Eastern and Garrott and the Bank. *See* 12 U.S.C. § 2199a(b). Under the

## II. THE STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

The United States Supreme Court stated in *Lujan v. National Wildlife Federation,* —— U.S. ——, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), that summary judgment motions "may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* 110 S.Ct. at 3187. The inferences to be drawn from the underlying facts in the materials presented must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Curran v. Merrill, Lynch, Pierce, Fenner and Smith,* 622 F.2d 216, 224 (8th Cir.1980). *See Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990).

Keeping the above principles in mind, the Court moves to the merits of the respective arguments. The Court also recognizes that some of the issues present close questions.

## III. RIGHT OF FIRST REFUSAL UNDER 12 U.S.C. § 2219a

The first issue faced by the Court is whether Eastern and Garrott are entitled to the right of first refusal provided by the Agricultural Credit Act of 1987.[3] The Act provides that

contracts as written, the Bank would receive $125,800.00 more from the sales to Eastern and Garrott than it will receive from the sales to plaintiffs.

The Court is also impressed with the Bank's change in posture concerning the right of first refusal. The Bank hotly contested Eastern and Garrott's claims for rights of first refusal for several years. Prior litigation over the farms

Agricultural real estate that is acquired by an institution of the [Farm Credit] System as a result of a loan foreclosure or a voluntary conveyance by a borrower ... who, as determined by the institution, does not have the financial resources to avoid foreclosure ... shall be subject to the right of first refusal of the previous owner to repurchase or lease the property, as provided in this section.

12 U.S.C. § 2219a.

Plaintiffs first argue that the Act's right of first refusal does not apply to the case at bar because such right is prospective in nature. Plaintiffs contend that because the Bank acquired the deeds to the farms two years prior to the Act's effective date of January 6, 1988, Eastern and Garrott are not entitled to the right of first refusal. The parties extensively briefed the legislative history of the Act, but the legislative history does not provide a clear answer to the question.

■■■ There is a strong presumption against the retroactivity of statutes. *United States v. Security Industrial Bank*, 459 U.S. 70, 79–80, 103 S.Ct. 407, 412–13, 74 L.Ed.2d 235 (1982). Nothing in the record before the Court or the legislative history of the Act is sufficient to overcome that presumption.

The language of section 2219a that "agricultural real estate *that is acquired ...* shall be subject to the right of first refusal ... as provided in this section" is consistent with a prospective application of such right. Additionally, sections 2219a(b)(1) and (c)(1) provide that "within 15 days after an institution ... *first* elects" to sell or lease acquired real estate "the institution shall notify the previous owner." This language also points toward a prospective application of the right of first refusal. If Congress intended that the statute was to be applied retroactively, it could easily have inserted the appropriate language. The Court therefore finds that the right of first

refusal provisions of the Act do not have retroactive effect.

Eastern and Garrott argue that their right of first refusal does not require retroactive application of the Act. Relying on *Martinson v. Federal Land Bank of St. Paul*, 725 F.Supp. 469 (D.N.D.1988), *appeal dismissed*, No. 88–5202 (8th Cir. May 5, 1989), Eastern and Garrott assert that the right of first refusal applies to *any* sale by the Bank of acquired agricultural real estate, regardless of when the Bank acquired title to the real estate, if the sale occurs after January 6, 1988.

The *Martinson* Court stated that

Second, the Court finds that the focus of Section [2219a] is on prospective sales of acquired property and that there was no Congressional intent to apply Section [2219a] to sale procedures to some acquired property but not all. The law specifically applies to all agricultural real estate that "is acquired". The phrase "that is acquired" describes a type of property (acquired real estate) and is temporally neutral in that it is not referring to time.

Since the plaintiffs' property is "acquired real estate" it is clearly in the class of acquired real estate which was intended to be included in Section [2219a]. That fact that Section [2219a] applies to property which was acquired prior to January 6, 1988, does not make it a retroactive provision, as the Section deals not with the prior acquisition of property but with its prospective sale.

*Martinson*, 725 F.Supp. at 471.

With due respect, this Court declines to follow the *Martinson* Court's interpretation of section 2219a. It is well established that "in construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). As discussed earlier, there is also a strong presumption for the prospective application of statutes.

has twice gone to the Eighth Circuit Court of Appeals. However, Eastern and Garrott have now agreed to pay more for the farms than plaintiffs. This circumstance may explain the

Bank's apparent change in position. At least no other explanation is discernable from the record before the Court.

*United States v. Security Industrial Bank,* 459 U.S. 70, 79–80, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). Finally, the Court recognizes that

> In construing provisions in the purview, or body, of an act, ... all matter contained therein must be interpreted together. It is presumed that all of the matter, regardless of the form of sectioning, must harmonize with the other sections of the act and with the purpose of the legislation. Therefore, it is an elementary rule of construction that all sections of an act relating to the same subject matter should be considered together unless to do so would be plainly contrary to the legislative intent. Insofar as possible the separate effect of each individual part or section of an act is made consistent with the whole.

2A *Sutherland Statutory Construction* § 47.06 (4th ed. 1984) at 132.

To follow *Martinson* and read section 2219a as temporally neutral, this Court would have to ignore the word "is" in the phrase "that is acquired". (If Congress had intended the result urged by Eastern and Garrott it would have used "that is or has been acquired".) This Court would also be required to ignore the phrase "as provided in this section" at the end of section 2219a. It is undisputed that the right of first refusal was enacted in the 1987 amendments to the Act; "this section" did not exist prior to January 6, 1988.

Sections 2219a(b)(1) and (c)(1) also provide that "within 15 days after an institution of the [Farm Credit] System *first* elects to [sell or lease] acquired real estate ... the institution shall notify the previous owner" of his right of first refusal (emphasis added). The fact that the Bank first elected to bind itself to sell the farms to plaintiffs in 1986 is not in dispute.

Finally, the Court notes that Congress could easily have provided that the right of first refusal applied to agricultural real estate currently in inventory as well as real estate acquired after January 6, 1988. *See, e.g.* 7 U.S.C. § 2000(b)(1)(A) and (B) ("the [Secretary or Administrator] forecloses, *holds in inventory on January 6, 1988, or takes into inventory* ...") (emphasis added). The Court therefore finds that the Act did not provide Eastern and Garrott with the section 2219a right of first refusal for post-January 6, 1988, sales of agricultural real estate that was acquired by the Bank prior to January 6, 1988. And in this particular case, it must be remembered that when the Act became effective the property was already subject to plaintiffs' options. Thus the interpretation urged by Eastern and Garrott would interfere with plaintiffs' established contractual rights and would, in effect, result in a taking of plaintiffs' property.

Plaintiffs further argue that any section 2219a right of first refusal claimed by Eastern and Garrott is barred by the doctrines of *res judicata* and collateral estoppel.[4] Plaintiffs also contend that the Bank is precluded from asserting that Eastern and Garrott enjoy the right of first refusal due to the doctrine of judicial estoppel. Because the conclusions of the Court dis-

---

4. In *Eastern Arkansas Planting Co. v. Federal Land Bank of St. Louis,* No. 89-1894 (8th Cir. November 17, 1989) (per curiam) [894 F.2d 1341 (table)], the Eighth Circuit Court of Appeals affirmed this Court's granting of the Bank's renewed application for a writ of assistance to gain possession of certain property from Eastern and Garrott. The Court of Appeals addressed Eastern and Garrott's arguments concerning their right of first refusal thusly

> In support of their position, [Eastern and Garrott] for the first time argued that [the Bank] had not afforded them a right of first refusal to repurchase or lease the farms as required under the Agricultural Credit Act of 1987 (Act), which became effective approximately two years after the deeds were delivered to

[the Bank]; and that they were entitled to remain in possession of the farms pending [the Bank's] decision to sell or lease the properties. The district court granted [the Bank's] motion for a writ of assistance, and this timely appeal followed.

> \* \* \* \* \* \*

> Upon careful review, we find that the district court's issuance of the writ of assistance was in compliance with this court's January 5, 1989 mandate, and that [Eastern and Garrott] waived any argument concerning their alleged rights under the Act, as well as the propriety of the issuance of the writ, by not raising these issues in their first appeal. (citations omitted).

*Id.* at 2.

cussed above are dispositive of the right of first refusal issue, the Court will not formally reach and deal with these arguments, although it will state that they, too, appear to have merit.

## IV. VALIDITY AND EFFECT OF THE OPTION TO PURCHASE CONTRACTS

The next question posed by the parties concerns the validity and effect of the option-to-purchase contracts between plaintiffs and the Bank. Eastern and Garrott challenge the validity of the options and assert that the options are not enforceable. The Bank, however, does not question the validity of the option contracts. Eastern and Garrott and the Bank also argue that the option contracts are subject to the right of first refusal of Eastern and Garrott. Plaintiffs assert that the option contracts are valid, enforceable and not subject to any right of first refusal. These arguments will be addressed in turn.

### A. *Validity of the Option–to–Purchase Contracts*

As discussed in Section I above, plaintiffs and the Bank on January 30, 1986, entered into "Option to Purchase Real Estate" contracts with respect to the farms.[5] Plaintiffs paid $5,000.00 to the Bank for each option. The option periods were extended a number of times upon mutual agreement of plaintiffs and the Bank, but plaintiffs did not pay any additional money in exchange for the extensions. Eastern and Garrott argue that the options are invalid and unenforceable due to a lack of additional consideration for the extensions.

In support of their argument, Eastern and Garrott rely on *Sorrells v. Bailey Cattle Co.*, 268 Ark. 800, 595 S.W.2d 950 (1980) for the proposition that "a subsequent agreement that purports to modify or change an existing agreement must be supported by consideration other than the consideration involved in the existing agreement." *Id.* at 814, 595 S.W.2d at 959.

■ Eastern and Garrott's reliance on *Sorrells* is misplaced, however, for two reasons. In *Sorrells* the buyer and seller

contracted for the sale of real estate. A second agreement, which deprived the buyer of certain benefits contained in the first agreement, was subsequently executed by the parties without additional consideration. The *Sorrells* Court stated the proposition on which Eastern and Garrott rely in reference to that second agreement. However, the critical distinction between the case at bar and *Sorrells* is that in *Sorrells* it was the disadvantaged buyer who challenged the validity of the second agreement. In the present case it is the plaintiffs who were arguably deprived of the original benefits of the extended option contracts by the inclusion of the "subject to the right of first refusal" language contained therein. The Bank was not disadvantaged. Neither plaintiffs nor the Bank, who both agreed to the inclusion of the "subject to" language in the extended options, challenges the validity of the consideration supporting the extended options. If the parties to the options are satisfied with the consideration, the Court fails to see how Eastern and Garrott can be heard to complain.

■ The second problem with Eastern and Garrott's reliance on *Sorrells* is that it ignores the well established Arkansas law that "where there is a mutual agreement to modify a contract, the mutual promise of the parties will constitute a sufficient consideration for a valid agreement." *Afflick v. Lambert*, 187 Ark. 416, 419, 60 S.W.2d 176, 177 (1933); *Freeman v. Freeman*, 20 Ark.App. 12, 722 S.W.2d 877 (1987). For example, the latest option extensions were supported by consideration in that the Bank agreed to extend the option expiration dates in exchange for plaintiffs' acceptance of the "subject to right of first refusal" modification. *See Wilson v. Spry*, 145 Ark. 21, 223 S.W. 564 (1920). *Cf. Kelley v. Coldren*, 226 Ark. 266, 290 S.W.2d 424 (1956) (option contract supported merely by nominal consideration cannot be withdrawn after acceptance by optionee).

The Court concludes that Eastern and Garrott are not proper parties to raise the issue of consideration. The Court further

---

**5.** The Bank has the power to make such contracts. *See* 12 U.S.C. § 2013(3).

concludes that the option-to-purchase contract extensions between plaintiffs and the Bank are valid and supported by adequate consideration as reflected in the recitals contained therein, to wit "... in consideration of the premises and the mutual agreements of the parties ..." as construed in the light of the prior dealings between the plaintiffs and the Bank.

### B. *Effect of the Option–to–Purchase Contracts*

Eastern and Garrott and the Bank argue that if plaintiffs' option contracts as extended are valid, the options are still subject to the section 2219a rights of first refusal of Eastern and Garrott. Eastern and Garrott and the Bank further argue that even if there is no right of first refusal under section 2219a, plaintiffs' option contracts are nevertheless subject to and conditioned upon a right of first refusal pursuant to the language of the options and independent of the Act. As discussed in Section III above, the Court has determined that Eastern and Garrott do not have a right of first refusal under 12 U.S.C. § 2219a. Therefore, any right of first refusal in favor of Eastern and Garrott must be found in the language of the option contracts themselves.

The option contract language at issue is contained in the option extensions effective December 31, 1989, and March 30, 1990. Except for the dates of the extended option exercise periods, the language is identical in each extension agreement:

> NOW, THEREFORE, in consideration of the premises and the mutual agreements of the parties, the term of said option, as amended by said agreement dated March 27, 1986, is hereby extended from [dates of extension period], *subject to* the other terms and provisions contained in the paragraph in said option entitled "Exercise of Option," as amended in paragraph 1 of said agreement dated March 27, 1986, and to *the right-of-first-refusal provisions of the Farm Credit Act of 1971, as amended by the Agricultural Credit Act of 1987.*

Plaintiffs' Exhibits 5 and 20, Docket No. 18 (emphasis added).

In *Barton v. Sturgis*, 224 Ark. 924, 278 S.W.2d 114 (1955), the Arkansas Supreme Court was called upon, within the context of a specific performance lawsuit, to interpret the language of an option contract for the purchase of land. The *Barton* Court discussed and explained the applicable Arkansas law

> As we read this option contract and consider it from its four corners, as we must, its terms appear clear and unambiguous. Therefore, we hold that all conversations, letters and documents, which it appears were exchanged [between the parties], and offered in proof, were merged into the completed option contract, in the absence of fraud, and were inadmissible under the parol evidence rule. We find no evidence of fraud in this record. The principle of law is well established that parol evidence to explain the relation of the parties at the time a written instrument is executed is admissible only to ascertain the true meaning of such instrument, when by its words or terms it appears to be ambiguous.
>
> In [a] recent case (citation omitted) we said: "(The parties) having made this contract in clear and unambiguous language, it is the duty of the court to construe it according to the plain meaning of the language employed, and not to enlarge or extend its terms on any theory." (citation omitted).
>
> "The first rule of interpretation is to give to the language employed by the parties to a contract the meaning they intended. It is the duty of the court to do this from the language used where it is plain and unambiguous." (Citation omitted).

*Id.* at 927–28, 278 S.W.2d at 117.

■ The Court finds that the language of the option contract extensions is clear and unambiguous. The Court also finds that plaintiffs and the Bank intended that the option contracts be subject solely to any right of first refusal granted to Eastern and Garrott by 12 U.S.C. § 2219a. If Eastern and Garrott have no right of first refusal under 12 U.S.C. § 2219a, then plaintiffs' options are not subject to or conditioned upon any independent right of first

refusal. Conversely, if Eastern and Garrott were entitled to the section 2219a right of first refusal, then plaintiffs' power to exercise the options would be conditioned upon that right. As discussed earlier, Eastern and Garrott do not have such right.

The Bank is experienced in land transactions, and both plaintiffs and the Bank had the services of counsel throughout the four year period preceding this lawsuit. The Bank's attorneys or employees drafted the option contracts and extensions thereof. Had plaintiffs and the Bank intended that Eastern and Garrott should have a right of first refusal on the farms independent of section 2219a, it would have been an easy matter to draft such provision into the option extensions.

## V. THE CONTRACTS BETWEEN THE BANK AND EASTERN AND GARROTT

The next issue before the Court is the effect of the contracts for the sale of the farms entered into by the Bank with Eastern and Garrott. Eastern and Garrott contend that these contracts negate plaintiffs' options to purchase the farms. At this time it becomes necessary to review the factual backgrounds and separate the transactions with respect to the two farms.

### A. *Eastern's Contract to Purchase the New Hope Farm*

By agreement effective December 31, 1989, plaintiffs and the Bank extended plaintiffs' option to purchase the farms until March 30, 1990. On March 1, 1990, the Bank sent to Eastern a notice of its right of first refusal to purchase the New Hope farm. By agreement effective March 30, 1990, and signed by the Bank on March 8 and plaintiffs on March 21, 1990, plaintiffs and the Bank extended plaintiffs' option to purchase the farms until April 30, 1990. On March 27, 1990, Eastern signed the Offer to Purchase Property and the Contract to Sell Real Estate furnished by the Bank. On or about April 4, 1990, the Bank signed the Contract to Sell Real Estate. Defendants' Exhibit N, Docket No. 29. On April 12, 1990, plaintiffs sent to the Bank a cashier's check in the amount of $146,620 and stated that "this letter constitutes an exercise of [the option to purchase the New Hope farm]." Plaintiffs' Exhibit 21, Docket No. 18. The Bank returned plaintiffs' check the next day and stated that Eastern's exercise of its right of first refusal mooted plaintiffs' efforts to exercise the option to purchase New Hope.

Eastern argues that because it and the Bank had already entered a contract for the sale of the New Hope farm prior to the time plaintiffs exercised the option on the farm, Eastern was the equitable owner of New Hope. *See Haynes v. Metcalf,* 297 Ark. 40, 759 S.W.2d 542 (1988). Therefore, Eastern contends, the Bank had no title or rights on which to base the March 30, 1990, extension of plaintiffs' option. Eastern asserts that this set of circumstances renders plaintiffs' option unenforceable because the subject matter of the option contract had already been sold by the Bank to Eastern.

Any contract for sale conveys only such rights as are possessed by the vendor. This issue was addressed by the Arkansas Supreme Court in *Carter v. Thompson,* 167 Ark. 272, 267 S.W. 790 (1925). Although that case dealt with the sale of property subject to prior liens, the principle stated by the *Carter* Court is equally applicable to the case at bar

A vendor, as against those holding joint and equal rights, can convey only such rights as he in fact has, and his vendee takes subject to the right and title of such other persons. [The vendor] could convey to the [vendee] only such title as he had.... He who has no title can convey none, and a bad title is not made good by the ignorance of the purchaser of its defects, or his want of knowledge of the better title.

*Id.* at 281–82, 267 S.W. at 793–94. As stated earlier, the contract extending plaintiffs' option on the New Hope farm, although effective on March 30, 1990, was signed by the Bank on March 8 and by plaintiffs on March 21, 1990. Eastern signed the contract to purchase New Hope on March 27 and the Bank signed it on or about April 4, 1990. The extension of the

option through April 30, 1990, was already in force when the sales contract was executed. Therefore, the Bank could pass to Eastern only such title as the Bank had at that time, i.e., title subject to plaintiffs' option to purchase the New Hope farm.

██ Eastern also argues that the sales contract with the Bank nullified plaintiffs' option because "an option to purchase land is not a contract for a sale ... and plaintiffs did not have any contract rights to purchase these properties until they exercised their options." Defendants' Memorandum in Support, Docket No. 28, at 40, 42 (citing *Swift v. Erwin*, 104 Ark. 459, 148 S.W. 267 (1912)). In *Swift* the Arkansas Supreme Court discussed the effect of options

> Now, an option is not a sale. It is not a contract by which one agrees to sell and the other to buy. It is only an offer by one to sell within a limited time and a right acquired by the other to accept or reject such offer within such time. When this privilege is exercised by acceptance, then and not until then does it become a contract of sale. Instead of being a sale, an option excludes the right to sell during its life. An option is defined to be "the obligation by which one binds himself to sell and leaves it discretionary with the other party to buy ... which is simply a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time." (citation omitted).

*Swift*, 104 Ark. at 465, 148 S.W. at 269. It appears to the Court that *Swift* clearly refutes Eastern's argument that its sales contract with the Bank negates plaintiffs' option contract to purchase the New Hope farm.

██ The close question presented by the chain of events leading up to plaintiffs' April 12, 1990, attempted exercise of their option to purchase the New Hope farm is the form of relief to which plaintiffs are entitled. In *Trieschmann v. Blytheville Steam Laundry*, 148 Ark. 237, 230 S.W. 3 (1921), the lessee laundry company failed to exercise its option to purchase the leased

building before the lessor sold the property to another person. The trial court ordered specific performance in favor of the laundry company, but the Arkansas Supreme Court reversed. The court stated the general rule with respect to an optionee's right to specific performance

> On this subject one line of decisions (the weight of authority) holds that an option contract to purchase does not vest any estate, legal or equitable, in the optionee prior to his election to purchase. This, it is said, results from the nature of the option contract in that thereby the optionor does not sell the property, nor does he thereby agree to do so, but sells to the other party the right merely of an election to buy, and therefore the rule that a vendor under an agreement of sale holds the title in trust for the vendee, and that the vendee holds the purchase money in trust for [the] vendor, does not apply to option contracts. (citation omitted).

> \* \* \* \* \* \*

> The laundry company had the legal right at any time to buy into an executory contract of sale, in which event a right to a decree of specific performance would have arisen. But the laundry company suffered a sale of the property to be made before it exercised its option to buy, and while it had only an option to buy, its remedy, therefore, consisted in an action at law for the breach of the contract.

> \* \* \* \* \* \*

> As the laundry company did not exercise its option prior to the sale, it acquired no equitable title to the land, and the court should not, therefore, have awarded a decree for specific performance.

*Id.* at 241–42, 230 S.W. at 4. Thus, as a general rule, one possessing an option to buy real estate is entitled only to breach of contract damages, and not to specific performance, when the property is sold to another prior to the exercise of the option.

There is, however, a critical distinction between *Trieschmann* and the case at bar. The *Trieschmann* Court found that the

buyer was without notice of the laundry company's option

> The [trial court] found that, at the time Trieschmann purchased the property from Nunn, the laundry company was in the actual possession of the property, and that Trieschmann was, therefore, affected with notice of the right of the laundry company to purchase the property at any time prior to [the expiration of the option]. Trieschmann had no notice except that resulting from the actual possession of the premises by the laundry company.

*Id.* at 240, 230 S.W. at 3. The *Trieschmann* Court also stated, with reference to the general rule quoted above, that

> There is another line of decisions which seems to hold to the contrary, but it occurs to us the well considered of these decisions hold merely that, when the option is supported by a consideration, the optionee acquires a right, by timely election, to enforce a conveyance of the property as against a purchaser or encumbrancer with notice. (citation omitted).

*Id.* at 241, 230 S.W. at 4. It appears to this Court that the *Trieschmann* rule is limited to situations where the buyer of the property subject to an option contract has no notice of such option.

In the case at bar, Eastern had knowledge of plaintiffs' option to purchase the New Hope farm. Plaintiffs state that they were approached by a person acting on behalf of Eastern and Garrott with an offer of $62,000 in exchange for plaintiffs' relinquishment of their option rights to the farms. Plaintiffs further state that this telephone conversation took place in early March, 1990, after Eastern and Garrott received the notice of first refusal from the Bank but prior to the time Eastern signed the sales contract with the Bank. Plaintiffs' Exhibit 28, Supplemental Affidavit of Bailey L. Wiener, Docket No. 43.

Eastern does not deny that this conversation took place, but it contends that the Court should not consider this information, *inter alia,* because it would be inadmissible as an offer of compromise under Fed.R.Evid. 408. However, the prohibition in Rule 408 is directed at excluding proof of a compromise for the purpose of showing liability on the part of the offeror. In this instance, plaintiffs' purpose is to show Eastern and Garrott had notice of plaintiffs' options to purchase the farms. Consideration of the information in this light does no violence to the purpose or spirit of Rule 408. *See Crues v. KFC Corp.,* 768 F.2d 230 (8th Cir.1985).

Eastern also had further notice of plaintiffs' options. The affidavit of Lawson Apperson,[6] an attorney in Memphis, Tennessee, is attached to Eastern and Garrott's Response to Plaintiffs' Reply Memorandum, Docket No. 44. Apperson stated that "upon inquiry, I was informed that neither Garrott and Eastern nor any of the lawyers involved in giving them advice had ever seen any document which gave the Wieners options to purchase these lands during this period and there were no such options of record." Defendants' Exhibit U, Docket No. 44, at 1. Apperson also stated that upon further inquiry, "I was informed that a title commitment was in existence which referred to the Wiener options." *Id.* Apperson further stated that he asked plaintiffs' attorneys about the options and was told that, although plaintiffs would not provide copies of the option contracts, the Wieners did claim that they held options from the Bank to purchase the farms. *Id.* at 2. Finally, Apperson stated that "I do not recall the exact time frame in which I made the foregoing contacts with these attorneys, but generally recall that they were between the 5th of March and the

---

**6.** The record is not clear with respect to whom Mr. Apperson represented in connection with this matter. His affidavit states that he was contacted by "G.A. Robinson, III" to provide legal advice regarding Eastern and Garrott's rights of first refusal. Eastern and Garrott's Response, Docket No. 44, states that Mr. Apperson was "an attorney who was involved from .

the beginning with giving advice about Eastern and Garrott's rights of first refusal" and that his affidavit "makes it quite clear that Eastern and Garrott made inquiry of plaintiffs' attorneys concerning plaintiffs' claim to have option rights." *Id.* at 2. What is clear is that Eastern and Garrott received notice of plaintiffs' claims from Mr. Apperson or parties he represented.

date Garrott first exercised his option on March 22, 1990." *Id.*

 Eastern argues that Apperson's affidavit supports its claim that it never actually saw copies of plaintiffs' option contracts. However, Eastern did not have to physically see the option contracts to be on notice of their existence. Moreover, there is nothing in the record to indicate that Eastern or Garrott made any effort to obtain a copy of the options, or information concerning the same, from the Bank.

The *Trieschmann* Court made this final comment concerning the rule announced in that case

> However, there might be a case where a transaction, taking on the form of the option, is such as to vest in the optionee an equitable right or estate in the property. (citation omitted).

*Id.* 148 Ark. at 241, 230 S.W. at 4. The Court finds that the case at bar is such a case. Eastern was on notice of plaintiffs' option to buy the New Hope farm and therefore cannot rely on the *Trieschmann* rule to limit plaintiffs remedy to compensatory damages.

### B. *Garrott's Contract to Purchase the Louise Farm*

 Plaintiffs and the Bank, by an agreement effective December 31, 1989, extended plaintiffs' option to purchase the farms until March 30, 1990. On March 1, 1990, the Bank sent to Garrott a notice of its right of first refusal to purchase the Louise farm. On March 14, 1990, plaintiffs sent to the Bank a cashier's check in the amount of $139,500 and stated that "this letter constitutes an exercise of [the option to purchase the Louise farm]." Plaintiffs' Exhibit 18, Docket No. 18. On March 22, 1990, Garrott signed the Offer to Purchase Property and the Contract to Sell Real Estate furnished by the Bank. On or about April 4, 1990, the Bank signed the Contract to Sell Real Estate. Defendants' Exhibit M, Docket No. 29. The Bank returned plaintiffs' check on March 26, 1990, and stated that Garrott's exercise of its right of first refusal mooted plaintiffs' efforts to exercise the option to purchase the Louise farm.

In *First National Bank v. North Little Rock Funeral Home, Inc.*, 258 Ark. 239, 523 S.W.2d 918 (1975), the lessee of property had an option to purchase that property. The lessee attempted to exercise the option at the option price of $75,000.00, but the property owner instead attempted to require the lessee, under a separate clause in the contract, to match an offer of $125,000.00 received from a third party. In affirming the trial court's order of specific performance in favor of the lessee, the Arkansas Supreme Court stated that "In due time the [lessee] gave the required written notice of its decision to purchase the property, thereby converting its option into a binding executory contract." *Id.* at 241, 523 S.W.2d at 919 (citations omitted).

Although plaintiffs' position in this case is not as strong as the position of the lessee in *First National Bank*, the principle set forth in *First National Bank* is applicable to the case at bar. When plaintiffs sent the check and written notice to the Bank that they were exercising their option on the Louise farm, plaintiffs' option was converted into a binding executory contract. Plaintiffs' contract for sale predated the contract between the Bank and Garrott and is thus superior to the latter contract.

### C. *The Equities in the Case*

Under the facts of this case, plaintiffs' relief is grounded in legal rights and not equitable rights. Nevertheless, Eastern and Garrott strongly argue that in this case the balance of the equities falls in their favor. The Court disagrees.

Eastern and Garrott first argue that they had no notice of plaintiffs' option contracts. These claims are addressed in Section V.A above and will not be revisited here.

Eastern and Garrott also argue that they should prevail because the Bank was under no obligation to extend the option periods of plaintiffs. However, the fact remains that the Bank did extend such periods; in fact, the last extension occurred *after* the Bank sent notices of the right of first re-

fusal to Eastern and Garrott. This argument does not benefit Eastern and Garrott.

Finally, there are many policies and objectives underlying the Act. *See* 12 U.S.C. § 2001. As evidenced by section 2219a, one of these objectives is to provide the dispossessed farmer with the opportunity to repurchase his farm, if he is financially able to do so, on the same terms that the farm is offered for sale to a stranger to the property.

In the case at bar, however, the Court notes that the right to purchase the farms is not a contest between the previous owners of the farms and strangers to the property. The real controversy is between two sets of strangers to the farms: the plaintiffs on one side and on the other side the persons with whom Eastern and Garrott have contracted to sell the farms immediately upon the exercise of their rights of first refusal. Eastern and Garrott have candidly admitted in their pleadings that the basis for their claims for compensatory damages is the difference between the price they will pay the Bank for the farms and the price they will receive from others upon the sale of the farms. *See supra* p. 513–514.[7]

■ Eastern and Garrott argue that the Act neither prohibits a previous owner from reselling his land after he has exercised his right of first refusal nor contains any restraints on alienability whatsoever. Eastern and Garrott are correct so far as their argument goes. However, in this case, Eastern and Garrott are using their rights of first refusal as nothing more than conduits for the profitable transfer of the farms to other persons. It is doubtful that Congress intended that the section 2219a right of first refusal be converted into a form of marketable security in this fashion. *See* S.Rep. No. 230, 100th Cong., 1st Sess. 35 (1987) (Right of first refusal is "nontransferable and limited solely to family farmers"). At least in weighing the equities, the Court may consider that the posi-

tion of Eastern and Garrott does not further the central objective of the statutory creation of the right of first refusal.

## VI. EASTERN AND GARROTT'S CROSS CLAIMS AGAINST THE BANK

Eastern and Garrott filed a number of cross-claims against the Bank. In those claims, Eastern and Garrott sought specific performance of the sales contracts, or in the alternative, money damages for failure to perform under the contracts. Eastern and Garrott also sought lost profits and damages for the Bank's failure to offer them the right of first refusal to lease the farms for the crop years 1988, 1989 and 1990. Finally, Eastern and Garrott sought punitive damages against the Bank.

■ Eastern and Garrott are not entitled to specific performance of the sales contracts between themselves and the Bank. For the reasons set forth in Section V. above and Section VIII. below, it is impossible for the Bank to perform. *See McIllwain v. Bank of Harrisburg*, 18 Ark. App. 213, 713 S.W.2d 469 (1986).

■ In *Zajac v. Federal Land Bank of St. Paul*, 909 F.2d 1181 (8th Cir.1990), the Eighth Circuit Court of Appeals held that there is no implied private right of action available to enforce the provisions of the Agricultural Credit Act. *Id.* at 1183. The Court is therefore without subject matter jurisdiction to hear the claims of Eastern and Garrott that the Bank violated the Act when it failed to offer them a right of first refusal to lease the farms for the 1988–90 crop years. The same is true of the claims for punitive damages on the grounds that the Bank "intentionally, maliciously, willfully and wantonly" interfered with the rights of first refusal of Eastern and Garrott under the Act. These claims will therefore be dismissed.

Eastern and Garrott's claims for money damages in lieu of specific performance

---

**7.** Eastern claims a difference of $208,000.00 between the price it will pay the Bank and the price it will receive upon immediate sale of the New Hope farm. Garrott claims a difference of $358,000.00 for the Louise farm. The Bank will also receive an additional $125,800.00 if the farms are sold to Eastern and Garrott rather than plaintiffs.

stand in a different light, however. It is well established in Arkansas law that "Whenever specific performance of a contract is denied because it cannot be enforced ... but there has been a breach of the contract, the plaintiff is entitled to recover damages for the breach...." *Ferguson v. Green*, 266 Ark. 556, 564, 587 S.W.2d 18, 24 (1979). Summary judgment is not appropriate at this time on the issue of damages for breach of contract.

## VII. EASTERN AND GARROTT'S COUNTERCLAIMS AGAINST PLAINTIFFS

Eastern and Garrott filed a counterclaim against plaintiffs for the tort of intentional interference with contractual relationships or business expectancies. Eastern and Garrott allege that plaintiffs interfered with their right of first refusal under 12 U.S.C. § 2219a by advising third parties with whom Eastern and Garrott were negotiating to sell the farms that Eastern and Garrott had no such right of first refusal. Eastern and Garrott claim compensatory damages of $150,000.00 and $440,000.00, respectively, for lost resale profits and rents and punitive damages of $5,000,-000.00 each.

One essential element of this tort is "the existence of a valid contractual relationship or a business expectancy." *Mid–South Beverages, Inc. v. Forrest City Grocery Co.*, 300 Ark. 204, 205, 778 S.W.2d 218, 219 (1989). As discussed in Sections III.–V. above, Eastern and Garrott did not have a valid contractual relationship or business expectancy under section 2219a of the Act. Therefore, Eastern and Garrott fail to state a cause of action under the tort of intentional interference.

## VIII. SPECIFIC PERFORMANCE

The final summary judgment issue to be addressed by the Court is whether plaintiffs are entitled to specific performance on the part of the Bank. The Bank argues that specific performance should be denied for several reasons, each of which will be addressed in turn.

The Bank first argues that plaintiffs are not entitled to specific performance because the granting of such remedy would require the Court to "rewrite or change" the contracts. The Bank based its argument on the fact that the options contain the first refusal language discussed earlier in this Order. For the reasons discussed in Sections III. and IV. above, this argument is without merit.

The Bank's second argument appears to be that specific performance is not available because the Bank could not deliver good title to plaintiffs due to Eastern and Garrott's rights of first refusal. The Bank in its third argument, which is closely related to the second argument, contends that because there is no mutuality of remedy, specific performance should not follow. This argument revolves around the state of the title; the Bank asserts that because of the unavailability of title insurance, it could not compel plaintiffs to specifically perform the contracts and accept title to the farms.

The title problem appears to be resolved. *See* Plaintiffs' Exhibit 27, docket No. 37. The Commitment for Title Insurance issued by the Chicago Title Insurance Company provides as conditions for the issuance of title insurance that the following be provided:

12. Furnish proof of proper notification of intent to sell subject property, to N.S. Garrott & Sons, a general partnership, N.S. Garrott, Jr. and James L. Garrott, surviving partners, Eastern Arkansas Planting Company, an Arkansas General Partnership. James L. Garrott, Jr. and William L. Montgomery, the previous owners of subject property, under the Agricultural Credit Act of 1987 (Federal Law 12 U.S.C. § 2219a).

13. Furnish release of Option to Purchase Real Estate between The Federal Land Bank of St. Louis, as Seller, and Bailey L. Wiener and Lee R. Wiener, as Purchaser, dated January 30, 1986, with renewals and extensions thereof, as to Tracts 1 and 3 only.

Plaintiffs' Exhibit 27 at 4–5. It appears from this document that any potential title

problems will be resolved by this Order and render this argument moot.

The Bank's final argument against specific performance is that it is impossible for the Bank to perform without the assent of Eastern and Garrott. Again, the Court trusts that this Order will resolve the impossibility of performance problem.

### IX. GARROTT'S MOTION TO AMEND CROSS–CLAIM

Also pending before the Court is the Motion to Amend Cross–Claim filed by defendant Garrott. Garrott seeks to amend its cross-claim against the Bank to plead the existence and breach of a contract to lease the Louise farm to Garrott for the 1989 crop year. The Bank has not responded to the Motion. The Court finds the Motion is well taken under Rule 15 of the Federal Rules of Civil Procedure and no prejudice will result. Garrott's Motion to Amend its cross-claim will therefore be granted.

### X. CONCLUSION

In summary, plaintiffs' Motion for Summary Judgment will be granted. Plaintiffs are entitled to specific performance of their option contracts to purchase the farms and the Bank is so directed. Conversely, the Summary Judgment Motions of defendants Eastern and Garrott for specific performance are denied.

Eastern and Garrott's counterclaim against plaintiffs for intentional interference with contractual or business relationships is dismissed. Eastern and Garrott's cross-claims against the Bank for specific performance; for damages for failure to provide Eastern and Garrott with rights of first refusal to lease the farms for the 1988–90 crop years; and for punitive damages for failure to provide rights of first refusal are dismissed.

Finally, Eastern and Garrott's cross-claims against the Bank for compensatory damages for breach of the sales contracts with the Bank remain, as does Garrott's claim for breach of contract to lease the Louise farm during the 1989 crop year, pursuant to Garrott's amended cross-claim.

Plaintiffs are directed to prepare a precedent, serve copies thereof on defendants and submit the same to the Court for review.

SO ORDERED.